[No. H026821. Sixth Dist. July 29, 2005.]

BERG & BERG ENTERPRISES, LLC, Plaintiff and Respondent, v. SHERWOOD PARTNERS, INC., et al. Defendants and Appellants.

**COUNSEL**

SulmeyerKupetz, Alan G. Tippie and Steven R. Wainess for Defendant and Appellant Sherwood Partners, Inc.

Sedgwick, Detert, Moran, & Arnold, Randall A. Miller, Robert S. Silver, Bijan Esfandiari and Hall R. Marston for Defendant and Appellant SulmeyerKupetz.

Allen Matkins Leck Gamble & Mallory, Robert R. Moore and Michael J. Betz for Plaintiff and Respondent.

## OPINION

**McADAMS, J.**—In this aggressively litigated business dispute between a major creditor and the assignee for the benefit of creditors of a troubled company, the creditor moved to amend its complaint to name the assignee's attorney as a defendant and to add a cause of action against the attorney and the assignee alleging an attorney-client conspiracy to deplete the assets of the assignor corporation.

We face the question of whether California law allows this plaintiff to pursue such conspiracy claims based solely on allegations of unnecessary and excessive fees charged by assignee's counsel that derive from the contention that counsel for an assignee for the benefit of creditors also owes a fiduciary duty to creditors, including a creditor that is adverse to the client assignee.

We reject this contention.

## INTRODUCTION

Plaintiff Berg & Berg Enterprises, LLC (Berg) sued defendant Sherwood Partners, Inc. (Sherwood) in this action for breach of fiduciary duty and related causes of action concerning Sherwood's performance as an assignee for the benefit of creditors. Berg was the largest creditor of the assignor, Pluris, Inc. Berg later sought leave to file a second amended complaint that named the law firm representing Sherwood, SulmeyerKupetz (Sulmeyer), as a defendant in causes of action for declaratory relief, accounting, waste of corporate assets, and conspiracy to waste corporate assets. The gist of the allegations against Sulmeyer was that it had acted in concert with its client, Sherwood, to deplete Pluris's assets by performing unnecessary legal services that were adverse to Berg and by excessively billing Sherwood for those services, which were paid for from the assigned assets. There were no allegations of fraud against Sulmeyer and the proposed pleading did not allege that Sulmeyer, as Sherwood's counsel, owed any duty to Berg either singly as the largest creditor or generally as one member of the class of creditors.

Sherwood, through its counsel, Sulmeyer, opposed the motion to amend on numerous grounds, including that Berg had not complied with or met its burden under Civil Code section 1714.10[1]—the gatekeeping statute that generally requires a prima facie showing prior to the assertion of a claim for

---

[1] Further unspecified statutory references are to the Civil Code.

conspiracy against an attorney and client. In deciding the motion, the trial court did not apply section 1714.10, and declined to assess whether the proposed pleading stated facts sufficient to constitute a cause of action against Sulmeyer. Instead, it treated the motion as one for leave to amend where great liberality in matters of pleading is afforded, and it allowed the amendment as Berg had requested, subject to further challenge by demurrer or otherwise. Sherwood and Sulmeyer then both appealed from the order under section 1714.10.[2]

To resolve the appeal, we examine whether under California law, by virtue solely of an attorney's representation of the assignee for the benefit of creditors, the attorney owes a duty of care to a particular creditor or to the class of creditors as a whole, absent allegations of fraud or a financial interest in the assigned assets beyond as a source for payment of fees earned in the course of that representation. We hold that counsel for the assignee owes no such independent duty to these third parties as a matter of law. We further hold that the exception to the application of section 1714.10 provided in subdivision (c)(2) thereof, which allows the filing of an action for conspiracy without prefiling approval where "the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain," means that the economic benefit derived by the attorney is over and above monetary compensation received in exchange for professional fees earned for the representation of his or her client.

We accordingly reverse the trial court's order that allowed Berg's amended complaint alleging attorney-client conspiracy-based claims against Sulmeyer and Sherwood.

## STATEMENT OF THE CASE[3]

Berg, a real estate developer, agreed to construct two commercial office buildings in San Jose and then lease them to Pluris, Inc., a network router developer.[4] The parties entered into a written lease but Pluris repudiated the

---

[2] Sulmeyer alone briefed the issues on appeal for the appellants' side. Sherwood joined these briefs and did not separately raise any issues on its own behalf. (Cal. Rules of Court, rule 13(a)(5).)

[3] The underlying facts are largely taken from the papers submitted in connection with Berg's motion to amend, and they have thus not yet been established in the case.

[4] Several Berg-related entities operated as actors on Berg's side of the transaction. Because this fact is background only and is not material to the disposition of the case, we do not differentiate among them and refer solely to Berg.

agreement even before taking possession of the buildings. Berg then sued Pluris for $100 million. After Pluris represented that it could realize new financing of at least $50 million but for the lawsuit, the parties entered into a settlement that included Pluris's agreement to pay Berg $16 million, evidenced by a promissory note that was secured by certain Pluris assets. Berg made known that it would seek Pluris's involuntary bankruptcy if the financing deal failed because it perceived in this a beneficial opportunity to acquire Pluris's net operating losses.

Pluris raised some money, but not what it had represented it could and not enough to either keep it in business or satisfy its obligation to Berg. Pluris then generally assigned all of its assets to Sherwood for the benefit of its creditors under Code of Civil Procedure sections 493.010 and 1802. The assets consisted of $4.5 million cash, tangible property worth between $300,000 and $700,000, and intellectual property worth between $100,000 and $300,000.

After some initial discussion and disagreement between Sherwood and Berg over Berg's claim and the manner in which Pluris's assets might be best marshaled and distributed, Berg, along with two other Pluris creditors, attempted to force Pluris into involuntary bankruptcy under section 303 of title 11 of the United States Code. As part of this effort, Berg offered a plan in which it would pay the estate $150,000, reduce its claim by $1.5 million in exchange for Pluris's stock, and further reduce its claim by $2.5 million in exchange for Pluris's tangible and intellectual property.

Sherwood, through Sulmeyer's representation, successfully defeated Pluris's creditors' efforts to force it into bankruptcy and the bankruptcy court ultimately dismissed the involuntary petition. One of the reasons the court gave for declining to authorize an involuntary bankruptcy was that Berg appeared to have been primarily motivated by the possibility of acquiring Pluris's net operating losses—not necessarily a proper basis for forcing a debtor into involuntary bankruptcy.

There were other disputes between Berg and Sherwood in connection with the administration of Pluris's assets, the details of which are not material here. Suffice it to say that the parties were adverse and that Sulmeyer represented Sherwood in its ongoing battle against Berg that was being waged on several fronts.

In an expansion of the theater, after the bankruptcy court dismissed the involuntary proceedings initiated against Pluris, Berg sued Sherwood in this

action. The complaint pleaded causes of action all surrounding the alleged breach of the fiduciary duty owed by Sherwood, as assignee, to Berg, as one of Pluris's creditors. It claimed that Sherwood's actions had resulted in the depletion of Pluris's assets that would otherwise have been available to satisfy Pluris's debt to Berg. Sulmeyer appeared in the action as counsel for Sherwood, which answered and filed a cross-complaint against Berg that in essence sought to avoid Berg's claims of a priority lien affecting Pluris's assigned assets.

Escalating the hostilities, Sherwood, through Sulmeyer, also filed an application in the bankruptcy court for reimbursement of $187,642.43 in attorney fees and costs it had incurred in connection with its successful opposition to Berg's earlier efforts to place Pluris into involuntary bankruptcy, and for $500,000 in sanctions against Berg for its conduct in connection with those efforts. Not only did the bankruptcy court deny Sherwood's motion, but the judge excoriated Sulmeyer at the hearing over the $175,000 in fees it had charged in connection with a "straightforward" motion.

Apparently emboldened by that development, Berg then filed its motion in this action for leave to amend its complaint. Berg sought to name Sulmeyer as a defendant in three existing causes of action and to add a claim for conspiracy against Sulmeyer and Sherwood arising from their joint conduct that had been adversarial to Berg's efforts to advance its creditor's claim against the Pluris assets. Though Berg did not file a petition to obtain prefiling approval under section 1714.10, the motion to amend argued that it met the requirements of this section as to the conspiracy claim. Accompanying the motion was the declaration of Berg's counsel, attached to which was the proposed pleading and a copy of the transcript from the bankruptcy court hearing, described *ante*, at which the judge had disparaged Sulmeyer's billings. Also accompanying the motion was the declaration of Berg's principal, Carl Berg, who averred some of its contents about the defendants' actions and motives on "information and belief."

Berg's proposed pleading alleged that Sulmeyer had acted as counsel to Berg's adversary, Sherwood, who, as assignee, owed a fiduciary duty to all of Pluris's creditors and "especially [to] Berg" as the largest creditor. It named Sulmeyer in existing causes of action labeled declaratory relief, accounting and return, and waste of corporate assets, and in the single new claim for conspiracy to waste corporate assets. The pleading did not contain any allegations concerning the existence of a duty owed to Berg by Sulmeyer.

Nor did it include any facts amounting to fraud by Sulmeyer or financial gain or receipt of money by Sulmeyer other than as compensation, albeit excessive, for legal services rendered to Sherwood.[5] The factual substance of the allegations against Sulmeyer (incorporated into every cause of action and pleaded in introductory background under the heading "The Sherwood and Sulmeyer Conspiracy to Waste Pluris['s] Remaining Corporate Assets") was that Sulmeyer performed unnecessary and unreasonable services for Sherwood that were adverse to Berg and the other creditors, and it excessively charged Sherwood for those services for which Sherwood paid from Pluris assets. The allegations specific to Sulmeyer included the following:

— "A real and actual controversy has arisen and now exists between [Berg] and Sherwood and Sulmeyer regarding Berg's respective future rights, liabilities and obligations pursuant to the [Berg-Pluris] Settlement Agreement." (Declaratory relief.)

— There was an "unknown amount of cash wasted on Sulmeyer's services. [¶] [Berg] is therefore entitled to the appointment of a new trustee/assignee to investigate Pluris'[s], Sherwood['s,] and Sulmeyer's books and records and then [to] forward to Pluris'[s] creditors all monies due and owing." (Accounting.)

— "Rather than working with Pluris['s] creditors, the largest of which is Berg, Sherwood retained Sulmeyer to attack Berg's standing as a creditor. . . . [¶] Since July 11, 2002, Sherwood and Sulmeyer have unreasonably wasted the remaining corporate assets of Pluris in a manner not permitted by law." (Waste.)

— "Sherwood['s] and Sulmeyer's waste of corporate assets include[s], but [is] not limited to, spending an inordinate amount of time dedicated to attacking Berg's secured claims against Pluris and moving to dismiss the involuntary bankruptcy petition. [¶] Sherwood and Sulmeyer have to date unreasonably wasted in excess of $800,000 in the administration of Pluris['s]

---

[5] In an apparent attempt to shore up its new pleading, and as pointed out by Sherwood at oral argument, the second amended complaint that Berg filed after leave to amend was granted is different from the proposed pleading that the trial court actually considered and allowed. For example, the later version alleges, in conclusory fashion, that Sulmeyer owed a duty to Berg as a creditor of Pluris ("As counsel for Sherwood, Sulmeyer owed Pluris['s] creditors a duty not to waste Pluris['s] assets."). But since the pleading that was filed was not authorized by the trial court, we conduct our review based on the proposed pleading that was actually permitted. We also question counsel's candor in filing a different pleading from that which was the subject of both the motion to amend and the court's order. And, as addressed in this opinion, based on the same underlying facts as alleged in both versions of the pleading, Sulmeyer owed no duty to Berg as a matter of law. Therefore, consideration of the later pleading, which is not before us, would not change the result we reach here.

estate. A majority of Sherwood['s] and Sulmeyer's waste of Pluris['s] assets has been dedicated to protecting their own interests and fees rather than protecting the interests and claims of Pluris['s] creditors." (Waste.)

— "Sherwood and Sulmeyer then began to conspire and agreed to unlawfully attack Berg's standing as a creditor. From information provided, it is believed that Sulmeyer spent over 370 hours from July 11 through September 30, 2002 on their attack on Berg's claim. For the work performed, Sulmeyer billed Sherwood approximately $141,000. [¶] Since July 11, 2002, Sherwood and Sulmeyer have continued the conspiracy to waste the remaining corporate assets in a manner not permitted by law." (Conspiracy to waste.)

The conspiracy claim, which is the final cause of action of the proposed pleading, incorporated all prior allegations and merely repeated what had already been alleged in the prior claims, adding only that Sherwood and Sulmeyer together conspired to perform those acts previously alleged. Thus, all the claims pleaded against Sulmeyer concerned the union of conduct between it and its client, Sherwood, vis-à-vis the administration of the Pluris assets, and activities alleged to be adverse to Berg's interest as a Pluris creditor. The prayer of the complaint sought, among other things, punitive damages against both Sherwood and Sulmeyer and further requested an order requiring Sulmeyer to "turn over all records of its services and invoices concerning Berg. . . ."

Sulmeyer did not oppose Berg's motion to amend as a party on its own behalf. But as counsel for Sherwood, it filed opposition that included the charge that the motion had not met the technical or substantive prepleading requirements of section 1714.10 as a condition for asserting a claim against an attorney for conspiracy with a client. Sherwood also objected to the evidence that Berg had submitted in support of the motion. Berg's reply reiterated that the motion substantially complied with section 1714.10 such that the proposed pleading should be allowed.

Despite the allegations of attorney-client conspiracy, the trial court declined to address the merits of the proposed pleading and treated the matter as any other motion for leave to amend, granting it based on the asserted liberality in matters of pleading and subject to defendants' ability to attack the new complaint by demurrer or otherwise. This appeal by both Sherwood and Sulmeyer followed.[6]

---

[6] Sherwood and Sulmeyer each filed its own separate notice of appeal, which was Sulmeyer's first "appearance" in the action as a party. Though not addressed by either party on appeal, this raises the question of Sulmeyer's standing to appeal. Under Code of Civil Procedure section 902, an appeal may be pursued only by an aggrieved party, which is a person named as a party of record—as Sulmeyer is as a result of the trial court's order—whose rights or

## PRELIMINARY CONSIDERATIONS ON REVIEW

### 1. *Section 1714.10*

■ Section 1714.10 prohibits the unauthorized filing of an action for nonexempt civil conspiracy against an attorney based on conduct arising from the representation of a client that is in connection with any attempt to contest or compromise a claim or dispute. It requires a plaintiff who desires to pursue such an action to first commence a special proceeding by filing a verified petition naming the attorney as respondent; the trial court then orders service upon the attorney, who is thereby given the opportunity to appear and contest the petition. If the petition is granted, the plaintiff is permitted to file the complaint in the main action, subject to the attorney's right to appeal the order. If, on the other hand, the petition is denied, the plaintiff is foreclosed from filing the complaint, likewise subject to his or her right to appeal that determination. As an alternative to the petition procedure, if a plaintiff files a nonexempt action against an attorney based on conspiracy with a client without first commencing the special proceeding as provided under section 1714.10, the attorney may effectively initiate the proceeding that will result in an appealable order by demurring or moving to strike the pleading for the plaintiff's failure to have complied with the prepleading statute.

■ "Section 1714.10 was intended to weed out the harassing claim of conspiracy that is so lacking in reasonable foundation as to verge on the frivolous. [Citations.] The weeding tool is the requirement of prefiling approval by the court, which must be presented with a verified petition accompanied by a copy of the proposed pleading and 'supporting affidavits stating the facts upon which the liability is based'; the pleading is not to be filed until the court has determined '. . . the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action.' [Citation.]" (*Evans v. Pillsbury, Madison & Sutro* (1998) 65 Cal.App.4th 599, 604 [76 Cal.Rptr.2d 679] (*Evans*).)

interests are injured by the order or judgment. (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737 [97 Cal.Rptr. 385, 488 P.2d 953]; *Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1342 [100 Cal.Rptr.2d 446]; *In re Miguel E.* (2004) 120 Cal.App.4th 521, 539 [15 Cal.Rptr.3d 530]; *Crook v. Contreras* (2002) 95 Cal.App.4th 1194, 1201 [116 Cal.Rptr.2d 319].) While standing to appeal is jurisdictional, the statute is remedial and should be liberally construed in favor of the right to appeal. (*Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 540 [104 Cal.Rptr.2d 686]; *Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 295 [50 Cal.Rptr.2d 493].) In our view, the order allowing Sulmeyer to be named as a party of record in the amended complaint, over objection of its client under section 1714.10, has a direct, immediate, pecuniary, and substantial effect on Sulmeyer's own rights or interests so as to confer standing to appeal.

Section 1714.10, subdivision (a), specifically provides: "No cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civil conspiracy to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action. The court may allow the filing of a pleading claiming liability based upon such a civil conspiracy following the filing of a verified petition therefor accompanied by the proposed pleading and supporting affidavits stating the facts upon which the liability is based. The court shall order service of the petition upon the party against whom the action is proposed to be filed and permit that party to submit opposing affidavits prior to making its determination."

Section 1714.10, subdivision (b), provides that failure to obtain a court order is a defense to any action for attorney-client civil conspiracy that must be raised via demurrer, motion to strike, or other appropriate motion.

Section 1714.10, subdivision (c), specifies exceptions to the statute's application. It provides: "This section shall not apply to a cause of action against an attorney for a civil conspiracy with his or her client, where (1) the attorney has an independent legal duty to the plaintiff, or (2) the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain."

The Legislature originally enacted section 1714.10 in 1988 in response to *Wolfrich Corp. v. United Services Automobile Assn.* (1983) 149 Cal.App.3d 1206 [197 Cal.Rptr. 446] (*Wolfrich*), in which the Court of Appeal had held that although attorneys representing an insurance company, who were not themselves engaged in the business of insurance, could not be sued for violating Insurance Code section 790.03, subdivision (h)(5), they could be liable for *conspiring* with their client to do so. (*Pavicich v. Santucci* (2000) 85 Cal.App.4th 382, 390 [102 Cal.Rptr.2d 125] (*Pavicich*).) The legislative impetus for the enactment was concern about the use of frivolous conspiracy claims that were brought as a tactical ploy against attorneys and their clients and that were designed to disrupt the attorney-client relationship. (*Id.* at pp. 390–391, 394–395; *Hung v. Wang* (1992) 8 Cal.App.4th 908, 920 [11 Cal.Rptr.2d 113].) As originally enacted, the statute prohibited a complaint from including a cause of action against an attorney based on a civil conspiracy with his or her client, except upon a court finding that the plaintiff had demonstrated a reasonable probability of prevailing. (*Pavicich, supra,* at p. 391.)

The statute is akin to several other "gatekeeping" statutes enacted by the Legislature in the same vein but applicable in other contexts. (See, e.g., Code Civ. Proc., § 425.13 [punitive damages claim against a health care provider]; Code Civ. Proc., § 425.14 [punitive damages claim against religious corporation]; Code Civ. Proc., § 425.15 [negligence claim against volunteer director or officer of nonprofit corporation]; Code Civ. Proc., § 425.16 ["SLAPP" (strategic lawsuit against public participation) suit affecting free speech/right of petition]; Civ. Code, § 3295, subd. (c) [discovery of punitive damages information]; see also *College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 713 [34 Cal.Rptr.2d 898, 882 P.2d 894].) All of these statutes, with varying procedures, require the plaintiff to demonstrate "pleadability" and some indicia of likely success on the merits before the respective claims may be pursued—usually as measured against the standard of a prima facie case. (*Id.* at pp. 716–720.) This requires both stating a viable cause of action and presenting competent, admissible evidence to establish the elements of the claim.[7] (*Ibid.*)

The California Supreme Court overruled *Wolfrich* in *Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 41, 45–49 [260 Cal.Rptr. 183, 775 P.2d 508] (*Doctors' Co*). In so doing, the court explained the fundamental principle that conspiracy is not an independent tort and, thus, a claim for conspiracy cannot lie if the the alleged conspirator was not personally bound by the duty violated and was instead acting only as the agent or employee of the party who did owe that duty. (*Id.* at pp. 44–45; *Pavicich, supra,* 85 Cal.App.4th at p. 391.) This principle is known as the "agent's immunity rule," which establishes that "an agent is not liable for conspiring with the principal when the agent is acting in an official capacity on behalf of the principal." (*Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318, 1326 [58 Cal.Rptr.2d 308]; *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 512 [28 Cal.Rptr.2d 475, 869 P.2d 454] (*Applied*).)

■ But the court in *Doctors' Co.* did articulate two settings in which a conspiracy claim might lie against an attorney for participating in the violation of a duty owed by the client to another: (1) where the attorney violates a duty that he or she independently owes to the plaintiff; and (2) where the attorney's acts go beyond the performance of a professional duty

---

[7] The court does not weigh the evidence but instead merely assesses whether the plaintiff has stated and substantiated his or her claim. (*College Hospital Inc. v. Superior Court, supra,* 8 Cal.4th at pp. 716–720.) Discussing section 1714.10 in particular, one Court of Appeal described this legal standard as "[w]hether or not the evidence is in conflict, if the petitioner has presented . . . evidence showing that a prima facie case will be established at trial, the trial court must grant the petition." (*Hung v. Wang, supra,* 8 Cal.App.4th at pp. 933, 929–934.) So applied, the statute passes constitutional muster in preserving the right to trial by jury. (*Id.* at pp. 931–933; *Aquino v. Superior Court* (1993) 21 Cal.App.4th 847, 856 [26 Cal.Rptr.2d 477].)

owed to the client and are, in addition, done for his or her own personal financial gain. (*Doctors' Co., supra,* 49 Cal.3d at pp. 46–47; *Pavicich, supra,* 85 Cal.App.4th at pp. 391–392.) Both of these settings, by definition, involve conduct of the attorney in which he or she acts not just as an agent for a principal, the client, but also for himself or herself independently. In these settings then, it is appropriate that the agent's immunity rule does not protect the attorney's conduct, for he or she is acting in more than just a representative capacity.

The Legislature responded to the court's holding in *Doctors' Co.* in 1991 by amending section 1714.10. First, the amendment limited the section's application to attorney-client conspiracy actions that arise from any attempt to contest or compromise a claim or dispute. Second, it expressly excepted from the statute's application the two contexts identified in *Doctors' Co.* in which a viable attorney-client conspiracy can be asserted. (*Pavicich, supra,* 85 Cal.App.4th at pp. 392–394.)

■ As we observed in *Pavicich,* the effect of the amendment on the statute's application is anomalous. Since the statute now removes from its scope the two circumstances in which a valid attorney-client conspiracy claim may be asserted, its gatekeeping function applies only to attorney-client conspiracy claims that are not viable as a matter of law in any event. (*Pavicich, supra,* 85 Cal.App.4th at pp. 394–396.) Thus, a plaintiff who can plead a viable claim for conspiracy against an attorney need not follow the petition procedure outlined in the statute as such a claim necessarily falls within the stated exceptions to its application.

Applying section 1714.10 thus requires the court to initially determine whether the pleading falls either within the coverage of the statute or, instead, within one of its stated exceptions. This determination pivots, in turn, on whether the proposed pleading states a viable claim for conspiracy against the attorney. (*Pavicich, supra,* 85 Cal.App.4th at pp. 392–395.) For all intents and purposes, this is the determinative question. If such a claim is stated, the analysis ends before reaching evidentiary considerations; the statute does not apply because the claim necessarily falls under one of its exceptions. If it is not stated, the analysis likewise ends, but with the opposite result; the pleading is disallowed for its failure to meet the initial gatekeeping hurdle of the statute.

### 2. *Appealability*

■ An order allowing an amended pleading is not ordinarily appealable. (*Freeman v. City of Beverly Hills* (1994) 27 Cal.App.4th 892, 896 [32 Cal.Rptr.2d 731].) But an order rendered under section 1714.10 that "determines the rights of a petitioner or an attorney against whom a pleading has

been or is proposed to be filed" is made appealable by that section "as a final judgment in a civil action." (§ 1714.10, subd. (d).)

Here, Berg did not file a petition under section 1714.10. Instead, it simply moved to amend the complaint to name Sherwood's counsel, Sulmeyer, as a party in three existing causes of action and to add a claim for attorney-client conspiracy. Nor did Sulmeyer demur to the new pleading or move to strike it as suggested by section 1714.10, subdivision (b). Instead, it simply opposed the motion to amend solely on behalf of its client, Sherwood. Both sides, however, treated this case, *post*, as they do here, as governed by section 1714.10 by virtue of the conspiracy claim. Beyond that, they dispute on appeal whether this section makes the order granting leave to file the proposed pleading appealable in its entirety, or only as to the seventh cause of action, labeled "conspiracy to waste corporate assets."

In addressing the questions of appealability and the proper scope of our review, we look to section 1714.10 itself. By its language, this section affects a "cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based on the attorney's representation of the client." (§ 1714.10, subd. (a).) Such a claim may not be included in a complaint unless the court enters an order allowing "*the pleading* that includes the claim for civil conspiracy." (*Ibid.*, italics added.) The court may do so only after a showing by the plaintiff of a "reasonable probability" of prevailing "*in the action.*" (*Ibid.*, italics added.) The lawyer defendant must raise the defense of a plaintiff's lack of compliance with this section at the first opportunity, or else it is waived. (§ 1714.10, subd. (b).) An order made under this section that determines the rights of an attorney against whom a *pleading* has been or is proposed to be filed is appealable.

Here, though no petition was filed under section 1714.10, both Berg and Sherwood addressed the applicability of this section in the trial court in connection with Berg's motion to amend. And the proposed amendments that concerned Sulmeyer entirely related to its liability for joint conduct with Sherwood in the course of Sulmeyer's legal representation of that client, thus potentially invoking the statute depending on whether a valid claim was actually stated. The order that allowed the pleading, over Sherwood's objection based on section 1714.10, also determined Sulmeyer's rights in connection with claims that by their very nature were likewise potentially governed by the section because the conduct of which defendants were accused falls within its ambit. Finally, Sulmeyer, on its own behalf, challenged the order at the first opportunity by appealing it.

Based on the broad language of section 1714.10 concerning its application to the entire pleading of which a targeted conspiracy claim is only a part, the statute's protective purpose to weed out at an early stage unmeritorious conspiracy claims that disrupt the attorney-client relationship, and the procedural circumstances here that beckon these themes, we consider the order that allowed the filing of Berg's second amended complaint to be not only appealable, but appealable in its entirety.

Case law supports this conclusion in both respects. In *Burtscher v. Burtscher* (1994) 26 Cal.App.4th 720 [31 Cal.Rptr.2d 682], the plaintiff sued her former husband, his new wife, and his corporation for causes of action arising from the defendants' joint conduct in taking possession of a residence that had been transferred to the plaintiff as part of the parties' divorce. Husband's attorney had personally, actively, and "directly" participated in the self-help repossession of the residence, even bringing in her deputy cousin to warn the occupant, a guest, that he could be arrested for trespass if he did not depart the premises. (*Id.* at pp. 726–727.) Like Berg here, to assert her claim for conspiracy against the opposing party's lawyer, the plaintiff in *Burtscher* did not file a petition under section 1714.10, electing instead to file a motion to amend the complaint, which the trial court granted. All the defendants, including the attorney, appealed from the order allowing the conspiracy claim. Despite the plaintiff's not having filed a verified petition or the law firm defendant's having demurred to the new pleading under section 1714.10, the Court of Appeal still treated the order allowing the claim as appealable under section 1714.10, since the order determined the attorney's rights under that section and because the motion to amend had been supported by declarations, the evidentiary equivalent of the verified petition required under the statute. (*Burtscher, supra,* at pp. 727–728.) We agree with this reasoning and apply it here under analogous circumstances.

### 3. *Scope and Standard of Review*

It may not necessarily follow from our conclusion regarding appealability that the scope of our review extends to all causes of action that were the subject of amendment. But the particulars of the new pleading in this case dictate that result. As discussed, *ante,* the amendments outlined the factual basis for the conspiracy claim in introductory, general allegations that were incorporated into every cause of action. More fundamentally, *all* the allegations regarding Sulmeyer's conduct, regardless of the label on the cause of action, arose out of its agreement to represent Sherwood and conduct in which it jointly engaged with its client, Sherwood, in the course of that legal representation. And the actual claim for conspiracy merely repeated allegations against Sulmeyer that were first leveled elsewhere in the pleading. Under these circumstances, the factual basis for the conspiracy claim—which

is derivative in any event—is so intertwined with the other causes of action pleaded against Sulmeyer that it is not severable for purposes of our review under section 1714.10. In other words, all the claims alleged against Sulmeyer involve conduct that falls within the ambit of the statute regardless of the labels attached to the particular causes of action. Thus, the scope of review in this case must necessarily reach all the new allegations and causes of action that are pleaded jointly against Sulmeyer and Sherwood. Anything less would afford incomplete review of the attorney-client conspiracy issues based on the way in which Berg opted to plead its amended claims, which as against Sulmeyer, would all give rise only to vicarious and conspiratorial, as opposed to direct, liability for its joint conduct with its client.

*Evans, supra,* 65 Cal.App.4th at page 604, supports our conclusion as to the proper scope of review of an order under section 1714.10. While the court there declined to review those portions of an order overruling a demurrer as to claims *unrelated* to the alleged attorney-client conspiracy, it did so for the very reason that those matters were beyond the reach of section 1714.10—an important distinction from the other causes of action here. And in *Evans,* the Court of Appeal did hold that its determination on appeal applied to the entire conspiracy cause of action in that case—even to the extent that the claim named defendants who were not afforded the protections of section 1714.10.[8]

Similarly, the court in *Alden v. Hindin* (2003) 110 Cal.App.4th 1502, 1506–1508 [2 Cal.Rptr.3d 845] (*Alden*) refused to extend its section 1714.10 review of an order overruling a demurrer to a cause of action against an attorney for malicious prosecution. The reason for the narrow scope of review there was that such claims, which necessarily allege conduct of the attorney for which he or she is independently liable for acting without probable cause and with malice, were not subject to the statute's prefiling requirements in any event. (*Alden, supra,* at pp. 1506–1508; *Westamco Investment Co. v. Lee* (1999) 69 Cal.App.4th 481, 487–488 [81 Cal.Rptr.2d 634].) That is a far cry from the case here, where the factual basis of *all* the claims pleaded against Sulmeyer is the very union of conduct between it and Sherwood which constitutes the attorney-client conspiracy and which would give rise, at most, to vicarious liability against Sulmeyer. Accordingly, our disposition of this

---

[8] The court observed: "The difficulty is that the tainted and the permissible were conjoined in a single cause of action . . . . Insofar as section 1714.10 is concerned, respondents' civil conspiracy count must survive or fall as a single unit. In this case it fails because it includes [the law firm], which is entitled to the protections of prefiling procedures. The conspiracy cause of action was therefore an unauthorized filing, no better than a courtroom trespasser, and subject to a motion to strike." (*Evans, supra,* 65 Cal.App.4th at p. 607.)

appeal under section 1714.10 affects the entire order of the trial court allowing the amended pleading and not just that portion of it that granted Berg leave to plead the seventh cause of action for attorney-client conspiracy.[9]

■ In assessing appealability, we have already concluded that the order granting leave to amend here is conceptually the same as an order stemming from a section 1714.10 special proceeding, and it is therefore appealable. Since the section 1714.10 special proceeding procedure operates like a demurrer or motion for summary judgment in reverse (*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 83 [131 Cal.Rptr.2d 777]), and since it involves only questions of law, it follows that our review of the order under that section is de novo. (*Hung v. Wang, supra,* 8 Cal.App.4th at p. 931 [§ 1714.10 determination is one of law, not fact].) This comports with the standard of review applicable to other analogous prepleading or gatekeeping statutes. (*College Hospital v. Superior Court, supra,* 8 Cal.4th at pp. 721–722; *Los Angeles County Metropolitan Transportation Authority v. Superior Court* (2004) 123 Cal.App.4th 261, 266 [20 Cal.Rptr.3d 92] [de novo review from denial of motion to strike punitive damages under Code Civ. Proc., § 425.13]; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999 [113 Cal.Rptr.2d 625] [independent review of order under Code Civ. Proc., § 425.16—the anti-SLAPP statute].) It likewise comports with the standard of review in cases in which the function of the reviewing court is statutory interpretation, the application of a statute to a particular set of circumstances, or the assessment whether a party has stated a legally sufficient claim—all of which we engage in as part of our review here.

Having addressed these numerous preliminary considerations that frame our review of the trial court's order in this case, we next determine whether section 1714.10 or one of its exceptions applies to Berg's amended pleading. This exercise, as we have observed, comes down to analyzing whether Berg has stated a viable claim against Sulmeyer for conspiracy with its client, Sherwood.

---

[9] This is not to say that causes of action for declaratory relief, accounting, and waste of corporate assets cannot be stated against Sherwood alone as Pluris's assignee for the benefit of creditors. Indeed, these claims had already been pleaded, *post*, against Sherwood at the time of the amendments naming Sulmeyer as a party. Berg's prior pleading (the first amended complaint) is beyond the scope of review of this appeal and we express no opinion as to the merits of the claims asserted against Sherwood there. We do acknowledge that in addition to the amendments to the second amended complaint that involved the conspiratorial allegations against Sulmeyer, the pleading also included other minor factual matters unrelated to Sulmeyer. Some of these facts, which concern events that occurred after the action was filed, are more appropriately asserted in a supplemental pleading. In any event, our opinion is not intended to later preclude these other factual amendments that relate only to Sherwood, and Berg is free to again seek leave to amend or supplement its complaint in order to assert them.

## ANALYSIS

### 1. *The Scope of Section 1714.10*

The general coverage of section 1714.10, before reaching its exceptions, extends to causes of action "against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client . . . ." (§ 1714.10, subd. (a).)

■ In order to maintain an action for conspiracy, a plaintiff must allege that the defendant had knowledge of and agreed to both the objective and the course of action that resulted in the injury, that there was a wrongful act committed pursuant to that agreement, and that there was resulting damage. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 47 [77 Cal.Rptr.2d 709, 960 P.2d 513].) Civil conspiracy is not an independent tort. (*Applied, supra,* 7 Cal.4th at pp. 510–511.) Rather, it is a " 'legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.' [Citation.]" (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1581 [47 Cal.Rptr.2d 752].) "The major significance of a conspiracy cause of action 'lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong . . . regardless of the degree of his activity. [Citations.]' " (*Howard v. Superior Court* (1992) 2 Cal.App.4th 745, 748 [3 Cal.Rptr.2d 575].) The essence of the claim is that it is merely a mechanism for imposing vicarious liability; it is not itself a substantive basis for liability. Each member of the conspiracy becomes liable for all acts done by others pursuant to the conspiracy, and for all damages caused thereby. (*Applied, supra,* 7 Cal.4th at pp. 510–511; *Westamco Investment Co. v. Lee, supra,* 69 Cal.App.4th at p. 486.)[10]

---

[10] Despite some conceptual similarities, civil liability for aiding and abetting the commission of a tort, which has no overlaid requirement of an independent duty, differs fundamentally from liability based on conspiracy to commit a tort. (*Casey v. United States Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1145, fn. 2 [26 Cal.Rptr.3d 401]; see also *Neilson v. Union Bank of California, N.A.* (C.D.Cal. 2003) 290 F.Supp.2d 1101, 1132–1137; cf. *In re County of Orange* (Bankr. C.D.Cal. 1996) 203 B.R. 983, affd. in part & revd. in part on other grounds (Bankr. C.D.Cal. 1997) 245 B.R. 138.) " '[A]iding-abetting focuses on whether a defendant knowingly gave "substantial assistance" to someone who performed wrongful conduct, not on whether the defendant agreed to join the wrongful conduct.' [¶] . . . [W]hile aiding and abetting may not require a defendant to agree to join the wrongful conduct, it necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act. A plaintiff's object in asserting such a theory is to hold those who aid and abet in the wrongful act responsible as joint tortfeasors for all damages ensuing

By these descriptions, and based on the actual allegations of the proposed pleading in which Sulmeyer is not alleged to have engaged in other than conspiratorial conduct arising out of its legal representation of Sherwood in connection with the Pluris assets and Sherwood's dispute with Berg, we perceive little difficulty in concluding that all four claims alleged against Sulmeyer fall within the initial scope of section 1714.10. This conclusion remains without regard to the labels attached to the causes of action or whether the word "conspiracy"—having no talismanic significance—appears in them. The particular allegations throughout Berg's entire complaint of the union of conduct between attorney and client arising out of the legal representation, the absence of other allegations of independent conduct by Sulmeyer, and the incorporation of conspiracy allegations into every cause of action, more than suffice to subject all the claims against Sulmeyer to the initial coverage of section 1714.10, as provided in subdivision (a).

### 2. *The Statutory Exceptions*

Having so concluded, we proceed to the next step in the analysis, which is ascertaining whether Berg has shown that the pleaded claims fall within either of the statute's exceptions, i.e., whether they allege a viable conspiracy claim against Sulmeyer such that prefiling approval is not required. (*Pavicich, supra*, 85 Cal.App.4th at pp. 390–396.) To refresh, to come within the statute's exceptions and thereby state a viable conspiracy claim against an attorney, the complaint must plead either that "(1) the attorney has an independent legal duty to the plaintiff, or (2) the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain." (§ 1714.10, subd. (c).)

These exceptions mirror those carved out from the agent's immunity rule, which, if applicable, otherwise protects Sulmeyer, acting strictly in its official role as counsel, against liability to Berg as a matter of law. The rule generally provides that "[a] cause of action for civil conspiracy may not arise . . . if the alleged conspirator, though a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing and was acting only as the agent or employee of the party who did have that duty." (*Doctors' Co., supra,* 49 Cal.3d at p. 44; see also

from the wrong." (*Howard v. Superior Court, supra,* 2 Cal.App.4th at pp. 748–749.) The aider and abetter's conduct need not, as "separately considered," constitute a breach of duty. (*Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 846 [33 Cal.Rptr.2d 438]; see also Restatement (2d) of Torts, § 876.) Even though aiding and abetting, which is not pleaded here, does not generally require that the defendant owe an independent duty, we believe that as pleaded against an attorney for conduct arising from the representation of a client, and depending on the particular allegations, this tort would still fall within the ambit of section 1714.10 and would thus be subject to its requirements and exceptions. (*Howard, supra,* at p. 749.)

*Applied, supra,* 7 Cal.4th at p. 512; *Pavicich, supra,* 85 Cal.App.4th at p. 394.) In other words, an attorney acting only within the scope of his or her official duties who is not personally bound by the duty violated may not be held liable for civil conspiracy even though he or she may have participated in the agreement underlying the injury. (*Applied, supra,* 7 Cal.4th at p. 512; *Mosier v. Southern Cal. Physicians Ins. Exchange* (1998) 63 Cal.App.4th 1022, 1048 [74 Cal.Rptr.2d 550].) This requires that the alleged conspirator agent already owe the duty to the plaintiff according to substantive law principles before his or her liability through conspiracy may be established.

Berg contends that both statutory exceptions apply to its pleaded allegations while Sulmeyer contends that neither does because it owed no legal duty to Berg and because it was acting entirely within its representative role as Sherwood's counsel and its only alleged financial interest was in the professional fees that it charged its client.

### A. *Did Sulmeyer Owe an Independent Duty to Berg?*

The proposed complaint here does not allege that Sulmeyer owed any independent duty to Berg or that it had any relationship to the dispute between Sherwood and Berg other than its role as Sherwood's counsel, for which it received excessive professional fees that were paid by Sherwood from Pluris assets. Nor did Berg's pleading allege that Sulmeyer committed fraud, which attorneys, like anyone else, have an independent duty to avoid. (*Pavicich, supra,* 85 Cal.App.4th at p. 397; *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, supra,* 107 Cal.App.4th at p. 69 [attorney acting on behalf of client may not knowingly misrepresent facts to third party]; *Skarbrevik v. Cohen, England & Whitfield* (1991) 231 Cal.App.3d 692, 711 [282 Cal.Rptr. 627] [attorney has personal duty to abstain from harming another by false representation or actual fraud, a duty independent of a client's duty to disclose that may give rise to its own, but not its lawyer's, liability for constructive fraud by concealment]; *Kidron v. Movie Acquisition Corp., supra,* 40 Cal.App.4th at pp. 1597–1598 [lawyer for fiduciary not liable for constructive, as opposed to actual, fraud that springs from duty of disclosure owed only by fiduciary].)

The parties agree that Sherwood, as the assignee for the benefit of Pluris's creditors, does owe a fiduciary duty to the creditors, including Berg, and that its role is akin to that of a trustee or administrator of an estate who owes fiduciary duties to the estate's beneficiaries. (*Farmers etc. Nat. Bank v. Peterson* (1936) 5 Cal.2d 601, 603–607 [55 P.2d 867] [affirming judgment against assignees for the benefit of creditors where they engaged in breaches of trust in the form of self-dealing, concealment, and bad faith, rendering

them unfit to serve as trustees]; *Gough v. Finale* (1974) 39 Cal.App.3d 777, 784, fn. 3 [114 Cal.Rptr. 562].) From this, Berg posits that Sulmeyer, solely by virtue of its role as counsel to a fiduciary, independently owed fiduciary duties to Pluris's creditors. As California authority for this proposition, Berg cites *Farmers etc. Nat. Bank.* But in that case, the lawyer for the assignees for the benefit of creditors was himself an assignee. Therefore, he independently owed fiduciary duties to the creditors apart from his role as counsel and the case does not serve as the authority for which it is cited. No other authority has been cited on the particular question whether an attorney representing an assignee for the benefit of creditors owes an independent duty to the creditors, or any one of them. The issue is therefore one of first impression that we resolve by applying legal principles existing in similar contexts.

We start with the firm proposition in the analogous trust context that " '[t]he attorney for the trustee of a trust is not, by virtue of this relationship, also the attorney for the beneficiaries of the trust. The attorney represents only the trustee.' [Citations.]" (*Wells Fargo Bank v. Superior Court* (2000) 22 Cal.4th 201, 212 [91 Cal.Rptr.2d 716, 990 P.2d 591]; see also *Lasky, Haas, Cohler & Munter v. Superior Court* (1985) 172 Cal.App.3d 264, 282–286 [218 Cal.Rptr. 205].) Likewise in the administration of an estate setting, "[I]t is well established that the attorney for the administrator of an estate represents the administrator, and not the estate." (*Goldberg v. Frye* (1990) 217 Cal.App.3d 1258, 1267 [266 Cal.Rptr. 483].) The fact that estate beneficiaries may be benefited by the attorney's representation "does not give rise to a duty by the attorney to such third parties . . . ." (*Id.* at p. 1268.) An attorney-client relationship normally is essential to the existence of an attorney's duty toward others. In these contexts in which the attorney represents a fiduciary, it is to the client trustee or administrator alone that the attorney owes duties, such as of loyalty and confidentiality and to avoid conflicts of interest, that spring from the attorney-client relationship. This rings especially true where, as here, the attorney's client and the third party are adverse, as the attorney's duty of loyalty to his or her client cannot be divided or diluted by a duty owed to a third party. (*Johnson v. Superior Court* (1995) 38 Cal.App.4th 463, 473–474 [45 Cal.Rptr.2d 312] (*Johnson*).)

There are cases that appear to stand as exceptions to the general rule just enunciated. But all of these cases have in common either that the attorney violated a separate duty that he or she independently owed to the third party, or the attorney participated in a breach of duty owed by the client and did so for his or her own personal financial advantage. We observe that these factors mirror the statutory exceptions to the application of section 1714.10. (§ 1714.10, subd. (c).) In both of these exceptional settings, the alleged facts

show the attorney's role to have exceeded that of a legal representative acting strictly for a client.

This was the case in *Morales v. Field, DeGoff, Huppert & MacGowan* (1979) 99 Cal.App.3d 307 [160 Cal.Rptr. 239] (*Morales*), in which the Court of Appeal held that counsel for a probate executor and testamentary trustee owed a duty of care to the trust beneficiary to disclose an ostensible conflict of interest in administration of the trust by the trustee. The attorney himself had also represented both the trustee and the third party dealing with the trust—a conflict of interest that the plaintiff contended caused damage to her interests as the beneficiary. And in that case, the attorney had also induced the plaintiff's inaction by directly representing to her that she need not take further action to protect her interests, that the attorneys would " 'keep [her] advised if anything unusual [arose],' " and that she " 'should feel reasonably assured that [her] interests [would] be protected.' " (*Id.* at p. 312.) As later observed by the Court of Appeal in *Johnson,* the facts of *Morales* suggest "the undertaking of an obligation of care by the attorneys, apart from their representation of their direct client, the fiduciary." (*Johnson, supra,* 38 Cal.App.4th at p. 474.)[11] Thus, the finding of a duty in *Morales* owed by the lawyer for the trustee to the trust beneficiary rested on affirmative conduct by the lawyer that exceeded his representative capacity as agent for the trustee, a factual scenario absent from the allegations here.

Similarly, in *Pierce v. Lyman* (1991) 1 Cal.App.4th 1093, 1106 [3 Cal.Rptr.2d 236], the Court of Appeal held that "attorneys for the former trustees of a testamentary trust (who clearly owed a fiduciary duty to their clients but not to the trust's beneficiary) nevertheless owed an undefined 'independent' duty to the trust's beneficiary that was sufficient to support the beneficiary's cause of action for conspiracy to breach the former *trustees'* fiduciary duty—because the attorneys allegedly acted to advance their own interests." (*Everest Investors 8 v. Whitehall Real Estate Limited Partnership XI* (2002) 100 Cal.App.4th 1102, 1108 [123 Cal.Rptr.2d 297].) The attorneys in *Pierce* were alleged to have filed false reports with the probate court which concealed their client's breaches of trust as a fiduciary, to have engaged in

---

[11] The Court of Appeal in *Morales* did state that when an attorney undertakes to provide advice to a trustee, "he in reality also assumes a relationship with the beneficiary akin to that between trustee and beneficiary." (*Morales, supra,* 99 Cal.App.3d at p. 316.) While on the facts of *Morales* this might have been so, to the extent this broad language posits a general duty of care owed by a lawyer for a fiduciary trustee to the beneficiaries of a trust, we find it inconsistent with California law, which uniformly holds that an attorney's "representation of a fiduciary, standing alone, does not impose upon the attorney a fiduciary obligation to the beneficiary," especially where the interests of the fiduciary and the beneficiary are in conflict. (*Johnson, supra,* 38 Cal.App.4th at pp. 473–474 and cases cited there [declining to apply *Morales* beyond its facts].)

Bself-dealing with trust assets over which they themselves had authority, and to have concealed these personal "investment opportunities" from the court. (*Pierce, supra,* at pp. 1105–1106.) The holding in *Pierce* thus rested on the exceptions to the general rule such that a lawyer for a fiduciary may be liable for breaching duties to beneficiaries if the attorney engages in active concealment and misrepresentations in the pursuit of personal financial gain that is over and above professional fees earned. Again, Berg's pleading here falls well short of these kinds of allegations against Sulmeyer.

■ Likewise, in *Wolf v. Mitchell, Silberberg & Knupp* (1999) 76 Cal.App.4th 1030 [90 Cal.Rptr.2d 792], the trust beneficiary alleged that the third party attorneys performed legal services intended to prevent the beneficiary from discovering dissipation of trust assets and the trustee's inappropriate investments. The appellate court held that these allegations met the requirements for a direct claim by a beneficiary against a third party who participated in a breach of trust, and the beneficiary accordingly had standing to sue. (*Id.* at pp. 1039–1040.) But in that case, the plaintiff alleged that the law firm defendant had made affirmative misrepresentations and had at times also represented him as the trust beneficiary, and in this capacity, the lawyers had advised him to waive accountings that would have revealed the breaches of trust. (*Id.* at pp. 1033–1034, 1040.) Again, such allegations that support an independent duty owed or that constitute active attorney misconduct that exceeds the proper representation of the fiduciary client and veers into fraud and personal financial advantage at the beneficiaries' expense will give rise to viable breach-of-duty claims against counsel for the fiduciary. This result obtains because the allegations place the attorney's conduct within the exceptions to the general rule that provides for an agent's immunity. Berg has not leveled these kinds of allegations against Sulmeyer here.

Despite Berg's contention that Sulmeyer, as counsel to the assignee for the benefit of Pluris's creditors, owed a duty to Berg simply by virtue of that representation, we find California law to be to the contrary.[12] Berg also argues that Sulmeyer owed Berg an independent duty of care by analogy to the bankruptcy setting, an asserted parallel to the state law assignment for the benefit of creditors. (Cf. *Blonder v. Cumberland Engineering* (1999) 71 Cal.App.4th 1057, 1061 [84 Cal.Rptr.2d 216] [Code Civ. Proc. § 1800 should

---

[12] See also American Bar Association (ABA) Standing Committee on Ethics and Professional Responsibility, Counselling a Fiduciary, Formal Opinion 94-380 (May 19, 1994) ["When the fiduciary is the lawyer's client all of the Model Rules prescribing a lawyer's duties to a client apply. . . . The fact that the fiduciary client has obligations toward the beneficiaries does not impose parallel obligations on the lawyer, or otherwise expand or supersede the lawyer's responsibilities under the Model Rules of Professional Conduct"]. This language undercuts any suggestion provided in the comment to ABA Model Rules, rule 1.2 that an attorney representing a fiduciary may have "special obligations" to the beneficiary in the trust situation.

be interpreted in accordance with decisions applying the analogous provision of the Bankruptcy Code, 11 U.S.C. § 547]; Schwartz & Ahart, Cal. Practice Guide: Enforcing Judgments and Debts (The Rutter Group 2005) ¶¶ 5:166–5:168, pp. 5-59 to 5-60 ["The assignee acts very much like a Chapter 7 bankruptcy trustee; it collects all of the debtor's nonexempt assets, liquidates them, and pays the proceeds to creditors"].) But the bankruptcy setting is one that is distinct and has no parallel in California state law.[13]

---

[13] A crucial difference between bankruptcy and the state law assignment for the benefit of creditors that is material to the allegations against Sulmeyer here is the requirement in bankruptcy of court approval of the debtor's or the trustee's legal representation—subject to the condition that counsel be "disinterested" and not represent or hold an interest adverse to the estate—and court controls on counsel's compensation. (11 U.S.C. §§ 327(a), 328(c), 329(a); Fed. Rules Bankr. Proc., rule 2016 (11 U.S.C.); see *In re Dieringer* (Bankr. N.D.Cal. 1991) 132 B.R. 34, 36–37 ["[T]he court has adequate means for sanctioning a debtor's counsel who fails to act diligently to protect the estate from dissipation by virtue of its complete control over the attorney's compensation pursuant to [11 United States Code sections 328–330]. The control is adequate to insure that attorneys do not knowingly assist debtors in abusing the bankruptcy laws; personal tort liability is not necessary. [¶] . . . [¶] The court sees no reason why the above principles should not apply to liability of a debtor's attorney to creditors in a bankruptcy case. Accordingly, the court holds that a debtor's attorney is not liable to creditors for mishandling a bankruptcy except to the extent that his conduct was fraudulent or otherwise intentionally wrongful."]; *Hansen, Jones & Leta, P.C. v. Segal* (D.Utah. 1998) 220 B.R. 434, 465 ["The 'fiduciary duty to the estate' language interspersed throughout the above-cited opinions is no doubt intended to impress on counsel for debtor-in-posssession his/her obligation to assist the debtor-in-possession in carrying out its responsibility to act in the best interest of the estate. However, the confusion wrought by this undefined duty and its intended obligee outweighs its utility. The strict prohibition of conflict of interest and overreaching by counsel and the disclosure requirements under the Bankruptcy Code layered over counsel's ethical responsibilities to the fiduciary client debtor-in-possession generally mandate this result. The ultimate assurance, though, lies in the bankruptcy court's assessment of counsel's compensation under 11 U.S.C. § 330(a)."].)

California does not have a comprehensive statutory scheme that governs assignments for the benefit of creditors after repeal in 1980 of former Civil Code sections 3449–3473. (*Credit Managers Assn. v. National Independent Business Alliance* (1984) 162 Cal.App.3d 1166, 1170 [209 Cal.Rptr. 119].) And to the extent Code of Civil Procedure sections 493.010 and 1802 still define and regulate this state court alternative to bankruptcy, these sections do not impose analogous kinds of judicial controls on the relationship between the assignee and its counsel and the professional fees earned by the lawyer as part of that representation. But the fact of this legislative void cannot create duties owed by counsel to third parties where none otherwise exist and where the imposition of such duties would conflict with state law and would interfere with the attorney-client relationship. We agree with Berg that a creditor of an assignor for the benefit of creditors is subject to a vulnerability in that the assets from which claims may be paid may be dissipated by unscrutinized professional fees incurred and paid by the assignee, and we perceive that controls could be imposed by subjecting counsel's fees to court supervision or approval as in the probate or trust setting. (See, e.g., Prob. Code, §§ 10800–10832, 11420, subd. (a)(1), 15684, 16243; Cal. Rules of Court, rules 7.700–7.707, 7.750–7.756, 7.903(c)(8); see also, e.g., Md. Code Ann. Com. Law § 15-103; Ohio Rev. Code Ann. § 1313.01 [both statutes requiring assignee for the benefit of creditors to post a form of faithful performance bond, as in the probate setting requiring the same of an estate's representative (see Prob. Code, § 8480 et seq.)].) But this fix requires legislative, as opposed to

Furthermore, there is a conflict in federal case law concerning whether counsel for the debtor in possession or the trustee owes a duty to creditors such that even in the bankruptcy context, the question or extent of a duty owed is an unsettled issue.[14] The conflict appears to center on differing views concerning who is the attorney's client in the bankruptcy setting, the debtor in possession or the "estate," and defining just what duties are owed to whom. Most of the cases addressing the issue do so in the context of attorneys' applications for compensation rather than claims of breach of duty asserted by a creditor against a debtor's or a trustee's attorney.

We have extensively reviewed federal authorities on this question. We are persuaded by the reasoning of those cases that thoroughly analyzed the issue and held that an attorney for a debtor in possession or a trustee in bankruptcy does *not* owe a duty of care directly to the creditors or any one of them. (*In re Sidco, Inc.* (E.D.Cal. 1994) 173 B.R. 194, 196 ["The authorities cited by appellant to create a fiduciary duty of counsel to the estate [are] very weak. . . . [A]ttorneys for debtors-in-possession have a fiduciary duty to their client, the debtor-in-possession, not to the creditors and shareholders whose interests may be adverse to the debtor. In fact, 11 U.S.C. § 327 guards against concurrent representation of both the creditor and a debtor-in-possession"]; *Hansen, Jones & Leta, P.C. v. Sega, supra,* 220 B.R. at pp. 447–467, 461 [counsel owes duties to the client and to the court—counsel for the debtor or trustee does not owe duties to creditors or estate beneficiaries that are

judicial, action. In any event, as the parties here agree, Berg is not left without a remedy as Sherwood may be surcharged for any proven breaches of its fiduciary duties owed to Pluris's creditors, such as for the improper dissipation of the assigned assets by the payment of unnecessary or excessive professional fees.

[14] For an excellent articulation of the issues and a survey of this conflict, see Bowles, Jr. & Rapoport, *Has the DIP's [debtor-in-possession's] Attorney Become the Ultimate Creditors' Lawyer in Bankruptcy Reorganization Cases?* (Spring 1997) 5 Am. Bankr. Inst. L.Rev. 47, 78–79. The article observes that the authors' review "of the case law on [an attorney's] duties toward the Estate convinced [them] of two things. First, in the universe of permissible Estate Counsel conduct, courts have been able to isolate individual examples of good and bad behavior, but they haven't been able to articulate a coherent, overall standard for attorneys to follow. Second, the semantic gymnastics that courts have used to justify the imposition of a fiduciary duty going beyond the Estate to individual creditors have been based on the following false syllogism: *It is simply not true that*

"*Major premise 1 (correct)*: The DIP owes fiduciary duties to the Estate.

"*Major premise 2 (correct)*: The Estate Counsel owes fiduciary duties to his/her/its client, the Estate.

"*Minor premise (questionable at best)*: If the Estate is insolvent, it's 'owned' by its creditors because there is no value left in the Estate for its shareholders or other equity owners.

"*Conclusion (false)*: Therefore, the Estate Counsel owes fiduciary duties *directly* to each creditor."

With heavy citation to authorities, the article goes on to persuasively discuss why it is so, in the authors' view, that the attorney for the debtor in possession *does not* owe fiduciary duties directly to the bankruptcy estate's creditors, or to any one of them.

"equivalent" to those his client owes. "Imposing an undefined fiduciary duty to the estate and its beneficiaries on counsel for debtor-in-possession is confusing, unhelpful and unnecessary to insure that counsel is independent and aware of his/her duty under the Bankruptcy Code and Model Rules to represent and assist the debtor-in-possession in the performance of its duties."]; *ICM Notes, Ltd. v. Andrews & Kurth, L.L.P.* (S.D.Tex. 2002) 278 B.R. 117, 125–126 [concluding that whereas an attorney for a debtor in possession may owe a general fiduciary duty to preserve the bankruptcy estate, this duty cannot be extended to justify the imposition of a fiduciary duty running from counsel for the debtor in possession directly to a particular creditor that would support a separate civil action for breach. "These cases [finding a duty owed by counsel to third parties] do not provide a foundation for a fiduciary duty running directly from the debtor's counsel to a particular creditor. . . . [¶] . . . [¶] . . . A ruling that counsel of a debtor-in-possession owes a fiduciary duty to a particular creditor is contrary to the tenet of the Bankruptcy Code mandating that debtor's counsel be disinterested. Therefore, the Court finds that counsel for a debtor-in-possession does not owe any fiduciary duties to a particular creditor."]; *In re Cenargo Intern., PLC* (Bankr. S.D.N.Y. 2003) 294 B.R. 571, 598–601.)

We accordingly reject the reasoning offered by bankruptcy cases on which Berg relies in positing the existence of a fiduciary duty owed by counsel for the trustee or debtor in bankruptcy to creditors, and by the extension of which Berg argues for an analogous duty in the state law assignment for the benefit of creditors context. (See e.g., *In re Sky Valley, Inc.* (Bankr. N.D.Ga. 1992) 135 B.R. 925; *In re El San Juan Hotel Corp.* (1st Cir.BAP 1999) 239 B.R. 635; *In re Doors and More Inc.* (Bankr. E.D.Mich. 1991) 126 B.R. 43; *In re Whitney Place Partners* (Bankr. N.D.Ga. 1992) 147 B.R. 619; *In re Wilde Horse Enterprises, Inc.* (Bankr. C.D.Cal. 1991) 136 B.R. 830; *In re Rivers* (Bankr. N.D.Ga. 1994) 167 B.R. 288; *In re Perez* (9th Cir. 1994) 30 F.3d 1209.)

Based on these federal bankruptcy cases and on the absence of California authority directly on point, Berg asks us to find that Sulmeyer owed a duty to it here. To do so would conflict with policy choices inherent in California law, and would dangerously broaden the limited circumstances in which an attorney has been held to owe a duty to a third party not in privity. In general, an attorney owes a duty of care, and is thus answerable for a breach of that duty, only to the client with whom he or she stands in privity. (*Borissoff v. Taylor & Faust* (2004) 33 Cal.4th 523, 530 [15 Cal.Rptr.3d 735, 93 P.3d 337]; *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 339 [134 Cal.Rptr. 375, 556 P.2d 737].)

The question whether a duty of care exists, or should be found, is one of law, and the determination is reached by balancing policy considerations under the circumstances of the particular case. (*Goodman v. Kennedy, supra,* 18 Cal.3d at p. 342.) These factors include: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; (6) the policy of preventing future harm; (7) the likelihood that imposition of liability might interfere with the attorney's ethical duties to the client; and (8) the likelihood that such liability would impose an undue burden on the legal profession. (*Biakanja v. Irving* (1958) 49 Cal.2d 647, 650–651 [320 P.2d 16]; *Lucas v. Hamm* (1961) 56 Cal.2d 583, 589 [15 Cal.Rptr. 821, 364 P.2d 685]; *Goodman v. Kennedy, supra,* 18 Cal.3d at p. 344; *Radovich v. Locke-Paddon* (1995) 35 Cal.App.4th 946, 963–965 [41 Cal.Rptr.2d 573]; *Mattco Forge, Inc. v. Arthur Young & Co.* (1995) 38 Cal.App.4th 1337, 1355–1357 [45 Cal.Rptr.2d 581]; *Moore v. Anderson Zeigler Disharoon Gallagher & Gray* (2003) 109 Cal.App.4th 1287, 1294–1307 [135 Cal.Rptr.2d 888]; *Osornio v. Weingarten* (2004) 124 Cal.App.4th 304, 320–321 [21 Cal.Rptr.3d 246].)

Relevant to the weighing of these considerations here, we note that Berg suggests on appeal that because of the "heightened" fiduciary duty that Sulmeyer owes to it, and Sulmeyer's presence in this action as a defendant, "Sulmeyer likely has a conflict of interest in its representation of Sherwood in this action" since Sulmeyer "cannot fulfill a fiduciary duty to act in the best interest of all of the creditors and at the same time be adverse to a single creditor—Berg."

We also observe that Berg's allegations against Sulmeyer, whether true or not, depend on the fact finder's second guessing of Sulmeyer's litigation and tactical strategies in the representation of its client, to whom Berg is adverse, and the need to discover information that is likely protected by the attorney-client privilege and the attorney work-product exclusion. Particularly in light of the affirmative purpose of section 1714.10, which is to weed out unmeritorious conspiracy claims tactically designed to disrupt the attorney-client relationship, we conclude that factors (7) and (8), listed *ante,* weigh against the finding of a duty owed by Sulmeyer to Berg in the circumstances of this case and far outweigh any of the other factors that might favor a duty. The existence of such a duty here would simply put Sulmeyer in an untenable and conflicted ethical position vis-à-vis its own client, to whom Sulmeyer owes its undivided loyalty, and would impose too great a burden and a disincentive on a lawyer contemplating the representation of an assignee for the benefit of creditors. (*Lucas v. Hamm, supra,* 56 Cal.2d at p. 589; *Goodman v. Kennedy, supra,* 18 Cal.3d at p. 344.) For these reasons, we decline in this case to

expand the circumstances under which an attorney owes a duty of care to a third party, particularly one who is adverse to the attorney's own client.

■ Accordingly, we hold that based on the allegations of Berg's second amended complaint, Sulmeyer did not owe an independent duty to Berg solely by virtue of its representation of Sherwood as assignee for the benefit of Pluris's creditors and its concomitant charging of professional fees, albeit alleged to be unnecessary and excessive, for legal services that were adverse to Berg. Without more, Berg has failed to allege facts that support the existence of an independent duty owed to it by Sulmeyer as a matter of law, and the exception provided at section 1714.10, subdivision (c)(1), does not apply to exempt Berg's pleading from the application of this section. Inherent in this determination is the parallel conclusion that in this respect, Berg has failed to state a prima facie claim for conspiracy against Sulmeyer (*Pavicich, supra*, 85 Cal.App.4th at pp. 394–396), and all four causes of action as presently pleaded against Sulmeyer are accordingly barred under section 1714.10, subject to our conclusion on the application of the second statutory exception, which we reach next.

B. *Were Sulmeyer's Alleged Conspiratorial Actions Performed Outside of its Duties to its Client and in Violation of a Legal Duty Owed to Berg for Sulmeyer's Personal Financial Advantage?*

■ The second exception to the application of section 1714.10 is the circumstance in which "the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain." (§ 1714.10, subd. (c).) This exception has more than one component. First, the lawyer's actions must have been taken in excess of his or her official representative capacity in service to his or her client. Second, they must also have violated a legal duty running to the plaintiff and have been in furtherance of the lawyer's own financial advantage.

There is a dearth of case law interpreting or construing the first part of this exception. But we think that by its plain terms, it means that the attorney was acting not merely as an agent for his or her client, but also for his or her own benefit, and that the conduct therefore went "beyond" the representative role. We find support for this construction not only in its harkening to the next element, that the attorney acted for his or her own financial advantage, but also in *Doctors' Co.,* which spelled out the exceptions to an attorney's liability for conspiracy later incorporated into section 1714.10 as the statute's exceptions. (*Pavicich, supra,* 85 Cal.App.4th at pp. 391–394.) As the high court stated in *Doctors' Co.,* "an attorney who conspires to cause a client to violate a statutory duty peculiar to the client may be acting not only in the

performance of a professional duty to serve the client but also in furtherance of the attorney's own financial gain."[15] (*Doctors' Co., supra,* 49 Cal.3d at p. 46.)

 Thus, the second part of the exception in a sense defines the first in that it suggests that the attorney's exceptional conduct that is outside the performance of his or her duties to the client are those activities that are taken in furtherance of the attorney's own financial advantage. Cases have interpreted the "financial advantage" exception to the agent's immunity rule to mean a personal advantage or gain that is over and above ordinary professional fees earned as compensation for performance of the agency. (See, e.g., *Evans, supra,* 65 Cal.App.4th at pp. 605–607 [attorney's own financial gain interpreted as when the attorney has a personal financial interest in the outcome of the litigation separate and apart from customary fees]; *Cooper v. Equity Gen. Insurance* (1990) 219 Cal.App.3d 1252, 1260–1261 [268 Cal.Rptr. 692] [plaintiff pleaded only attorney's contingent fee interest, which was short of an allegation that the attorney stood to gain "anything more than a fee for his work as an attorney," and thus did not plead exception to liability for conspiracy].)[16]

In *Black v. Sullivan* (1975) 48 Cal.App.3d 557 [122 Cal.Rptr. 119], which predated the statutory amendment codifying the attorney financial gain exception, the Court of Appeal held that while the receipt of ordinary fees for representation is not sufficient to give an attorney a stake in the wrongdoing, an attorney who receives a beneficial interest in a security interest held by a client can be held liable for conspiring with that client in litigation involving the security interest. The attorneys in *Black* were assigned a beneficial interest in a deed of trust that was the subject of the litigation as payment for their fees. Their financial gain was from the enhancement of their property interest and not from fees generated by their labors as agents of their client. Accordingly, they had a personal interest, separate and apart from their client's, in preventing the sale of the property in question. (*Id.* at pp. 568–569.) The Court of Appeal in *Skarbrevik v. Cohen, England & Whitfield, supra,* 231 Cal.App.3d at page 710, also held that attorneys who

---

[15] From this it seems clear that the "duty" running in favor of the plaintiff referred to in this exception is not an independent one owed by the lawyer as in the statute's first exception, but is instead one "peculiarly" owed by the client to the plaintiff.

[16] The rationale for not characterizing a contingency fee agreement as a personal financial interest of the attorney for purposes of applying the statutory exception is that a contingent fee contract does not transfer to the attorney any rights to the client's cause of action. Rather, it gives the attorney a lien on the client's prospective recovery. (*Isrin v. Superior Court* (1965) 63 Cal.2d 153, 159 [45 Cal.Rptr. 320, 403 P.2d 728].) Because the client can fire the attorney at any time, and because the attorney has no enforceable rights of his or her own in the action, the attorney whose fee is contingent on the success of the client's lawsuit is merely acting as an agent of the client, notwithstanding his or her contingent fee interest. (*Ibid.*; *Cooper v. Equity Gen. Insurance, supra,* 219 Cal.App.3d at pp. 1260–1261.)

received only "modest" compensation for their services were not acting for their own financial gain for purposes of imposing liability for conspiracy with a client.

The purpose of this limitation on the "financial advantage" test, an exception to the agent's immunity rule, is to protect employees and agents of a principal against the imposition of vicarious liability for aiding and abetting or conspiracy for the mere fact of their paid employment. (*Ibid.*; see also *Neilson v. Union Bank of California, N.A., supra,* 290 F.Supp.2d at p. 1122 ["California courts uniformly hold that ordinary fees, even fees calculated on the basis of the amount of assets held in an account, do not satisfy the 'personal gain or financial advantage' requirement"].)

We turn now to the first part of the exception. It seems clear that Berg's allegations regarding Sulmeyer's conduct do not place that conduct beyond Sulmeyer's representation of its client, Sherwood. While the services rendered were alleged to have been unnecessary and not beneficial to the administration of the Pluris assets, they were nonetheless alleged to have been performed on Sherwood's behalf and for its benefit. Thus, we are hard pressed to conclude that Berg has well pleaded the applicability of this exception, no matter how unnecessary Sulmeyer's services or how excessive its billing practices were alleged to have been. Given that the plaintiff bears the burden under section 1714.10, and the statute's purposes, we conclude that the particular allegations made against Sulmeyer here do not bring its conduct within the second exception to section 1714.10 because all of Sulmeyer's conduct was alleged to have been in service of its client and within this representative capacity, even though the conduct generated professional fees that were alleged to have been excessive.

Even if we were to conclude that Berg's allegations were sufficient to place Sulmeyer's conduct outside of the representative capacity, we would still conclude that Berg failed to satisfy the financial advantage component of section 1714.10's second exception. We recognize that what Berg alleged here is that Sulmeyer charged not modest or customary—but rather unconscionable—fees. Still, all that is pleaded is that Sulmeyer charged *its own client* hourly professional fees for services indubitably rendered on behalf of that client. These allegations do not plead that Sulmeyer's conduct was in furtherance of a personal financial advantage or interest, separate and apart from the advancement its client's interests, in the subject matter of the representation. Nor do they plead self-dealing by Sulmeyer. Nor do they suggest that Sulmeyer enjoyed a financial advantage by controlling the distribution of Pluris's assets in payment of its fees. We do not find it in keeping with the statute's purposes that mere allegations, however egregious, by a third party of an attorney's excessive billing of a client for services

rendered satisfy the financial gain requirement of the statute's exception. Such allegations could be made by an adversary in any case, thus significantly weakening the gatekeeping function of the statute.

 Thus, based on Berg's particular allegations against Sulmeyer here, we conclude that the complaint failed to allege not only that Sulmeyer's acts went beyond the performance of a professional duty to its client, but also that Sulmeyer's alleged activities were in furtherance of its own financial gain as provided in section 1714.10, subdivision (c)(2). We further hold that "in furtherance of the attorney's financial gain" as used in this subsection means that through the conspiracy, the attorney derived economic advantage over and above monetary compensation received in exchange for professional services actually rendered on behalf of a client. Accordingly, the second statutory exception to the application of section 1714.10 does not apply in this case. It follows that Berg's claims against Sulmeyer fall within the coverage of, rather than the exceptions to, the statute. This being the case, Berg has failed to state a prima facie claim of conspiracy against Sulmeyer, and the pleading in which the claims were alleged is accordingly disallowed. (*Pavicich, supra,* 85 Cal.App.4th at pp. 394–396.)

## CONCLUSION

The trial court's order allowing Berg's second amended complaint is an appealable order under section 1714.10, and the scope of our de novo review extends to all the claims pleaded against Sulmeyer. Since the causes of action other than the one particularly designated as conspiracy all derive their vitality from incorporated conspiracy-based allegations, they rise or fall with those allegations and do not require separate analysis. All the claims against Sulmeyer, by their particular allegations, fall within the ambit of section 1714.10 and do not come within either of the section's two exceptions. Since Berg's allegations thus fail to state viable claims against Sulmeyer in that they do not, as a matter of law, allege a prima facie case against it for conspiracy with its client, Sherwood, the trial court should have denied the motion for leave to amend by which Berg sought to file the pleading in which the claims were alleged, without the need to consider the evidence offered by Berg in support of its motion or Sulmeyer's objections thereto.[17] We accordingly reverse the trial court's order allowing Berg's second amended complaint for Berg's failure to have met the requirement of section 1714.10 of establishing a legally sufficient or prima facie claim of conspiracy against Sulmeyer.

---

[17] Since we have disposed of the appeal in this manner, it is not necessary for us to reach the issue whether Sulmeyer's conduct was protected by the litigation privilege afforded at section 47, subdivision (b), and we accordingly decline to do so.

## DISPOSITION

The order granting Berg's motion for leave to file the proposed second amended complaint, which we treat as an order entered under section 1714.10, is reversed.

Rushing, P. J., and Walsh, J.,* concurred.

A petition for a rehearing was denied August 25, 2005, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied November 2, 2005.

---

*Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.