Filed 3/30/26  Garcia v. Sablan CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| VERONICA I. GARCIA,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>ANTHONY SABLAN et al.<br><br>Defendants and Respondents. | F086867<br><br>(Super. Ct. No. MCV088855)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Madera County.  Brian Enos, Judge.

Veronica I. Garcia, in pro. per., for Plaintiff and Appellant.

Whitney, Thompson & Jeffcoach LLP, Devon R. McTeer and Paul Gaus for Defendants and Respondents.

-ooOoo-

Plaintiff Veronica I. Garcia sued her father and the attorneys who sent her a demand letter on behalf of her father, alleging an attorney-client conspiracy involving extortion and the embezzlement of loan proceeds from the refinancing of her residence.

The attorneys' demurrer and motion to strike asserted Garcia failed to comply with Civil Code section 1714.10 (section 1714.10), which requires plaintiffs seeking to sue attorneys for conspiring with their clients to obtain court approval before filing such claims. The trial court determined the prefiling approval requirement applied to Garcia's claims, sustained the demurrer, and allowed Garcia to file a petition for court approval.

Garcia was one day late in submitting her petition and the clerk of court returned the petition to her unfiled. Garcia filed a motion for reconsideration and also requested relief under Code of Civil Procedure section 473. The trial court denied the motion on both procedural and substantive grounds. Garcia appealed.

As explained below, Garcia's conspiracy claims are subject to the prefiling requirement in section 1714.10, subdivision (a) and do not qualify for the exceptions in section 1714.10, subdivision (c). As a result, court approval was necessary for Garcia to pursue the conspiracy claims. The trial court's denial of that approval on reconsideration was appropriate because her petition failed to comply with procedural requirements in section 1714.10 and Garcia did not demonstrate a reasonable probability of prevailing on the conspiracy claims against the attorneys. Contrary to Garcia's arguments, the entry of default against her father is not binding on the attorney defendants and, therefore, does not establish Garcia had a reasonable probability of prevailing on the conspiracy claims against them.

We therefore affirm the order.

**FACTS**

In December 2017, Garcia and her father, defendant George Hernandez Lopez, Jr., (Father) arranged for the acquisition and financing of real property located on Deerwood Drive in Madera (Deerwood). Garcia alleges that (1) Deerwood was purchased as her residence and for her exclusive use with a $50,000 down payment from her and with the support of Father's credit; (2) she was the sole source of the $50,000, which was "her

2.

entire divorce settlement money"; (3) she and Father are on the title as joint tenants; (4) she is the 100 percent rightful and legal owner and sole occupying possessor of Deerwood; and (5) she is entitled to 100 percent of the funds generated from refinancing the property and 100 percent of the future profit from any sale. She alleges their arrangement created a binding fiduciary relationship and Father has absolutely no personal monetary investment in Deerwood and has no rights to occupy, possess, or enter Deerwood.

In December 2021, Garcia and Father refinanced Deerwood by obtaining a $151,000 loan, which was enough to pay off the existing mortgage and leave them a balance of $31,197.36. The refinancing paperwork included a grant deed that was recorded in Madera County. It stated Father granted Deerwood to himself, an unmarried man, and Garcia, an unmarried woman, as joint tenants. Over $16,000 of the loan proceeds were used by Garcia and Father for roof and window replacement. The improvement projects resulted in tension in their relationship. Garcia alleges it was "evident that [Father] resented me urging him to get the agreed upon work done" and Father "tried to delay getting the work done for each project." Garcia asserts that, faced with Father's delays and obstinance, she "told him that he would leave me no choice but to take him to court. That is when he begrudgingly, argumentatively and resentfully complied to get the work done."

Garcia also alleges it had been agreed that other improvement projects would follow, and the initial repairs left a balance of $14,930.36 from the loan proceeds. She states Father held that balance in his bank account in a custodial capacity under their fiduciary relationship.

In late December 2021, Garcia learned she needed $2,500 to cover costs "to schedule her extremely critical surgery" and she sought to use funds from the refinancing to pay those costs, other expenses related to her surgery, mortgage payments, and living

3.

expenses during her recovery period when she could not work. Garcia assured Father that she would reimburse the amount once she returned to work, but he flat out refused. She describes Father as intentionally planning and conspiring to steal her home and the divorce settlement money she invested in it, leaving her homeless and destitute. Garcia also alleges that after January 2022, Father engaged in unprovoked, unwarranted, and hostile behavior towards her, and he refused to account for or release the $14,930.36 to her.

Garcia's surgery was performed in February 2022. Garcia alleged that, at no time whatsoever, had she requested Father, or relied upon him, to make any payments on the loan secured by Deerwood from his personal funds. She further alleged that, although she had been late at times after the surgery, both Father and the lender were fully informed and she initiated and maintained partial payment arrangements directly with the lender, which avoided an actual default. Garcia alleged Father "wickedly and cruelly refused to allow [her] to draw from her refi proceeds to cover mortgage payments until she would be medically released to return to work." (Emphasis omitted.)

*Demand Letter and Response*

Garcia alleges that from January 2022 until July 6, 2022, Father never made known to her any claim to the remaining loan proceeds. Sometime before July 6, 2022, Father hired defendant Anthony Oscar Sablan, an attorney, and defendant Sablan Law, Inc. to communicate with Garcia on his behalf. Sablan Law, Inc. is owned in equal parts by Anthony Sablan and defendant Stacy Farmer Sablan. This opinion refers to Anthony Sablan, Stacy Sablan, and Sablan Law, Inc. collectively as the Sablan Defendants.

In a letter dated July 6, 2022, the Sablan Defendants stated they were contacting Garcia on behalf of Father and he intended to sell Deerwood as soon as possible. The contents of the demand letter are set forth in part I.A., *post*. The Sablan Defendants also sent a similar, but not identical, demand to Garcia by e-mail.

4.

Garcia responded in a 23-page letter dated July 20, 2022. The response stated the demand letters appeared to be intentionally deceptive and misleading communications that were "a dirty rotten, calculated, shyster-lawyer tactic." (Italics omitted.) The response referred to Anthony Sablan as a "piece of garbage." (Italics omitted.) It asserted Father was not the sole owner of Deerwood and stated Garcia (1) was on the official title as a joint tenant; (2) was the sole possessor of Deerwood; (3) had purchased her home with a $50,000 down payment; and (4) had made all the mortgage payments since the 2017 acquisition, first indirectly through Father and later directly to the lender without Father's involvement. The response provided details about the December 2021 refinancing and the use of the proceeds for improvements. It demanded the release of the remaining proceeds to her. Garcia also asserted the demand letters had falsely stated (1) she had failed to make mortgage payments and (2) she planned to move out.

The response made several accusations against the Sablan Defendants. It asserted the attorneys had violated Rules 3.10, 4.1 and 4.3 of the Rules of Professional Conduct and the attorney-client privilege did not apply to their communications with Father because of the crime-fraud exception to the privilege in Evidence Code section 956, subdivision (a). The crimes listed included Father's grand theft (Pen. Code, § 487), Father's theft by false pretenses (Pen. Code, § 532), and the attorney's felony extortion (Pen. Code, § 518). The response asserted the Sablan Defendants, by way of their extortionate communications, were criminal accomplices, coconspirators, and aiders and abettors in Father's scheme to steal from her. Garcia stated she would be filing complaints with the State Bar and would file those complaints in any court proceedings. The response also set forth several demands by Garcia, including an accounting of the refinancing proceeds; the release of the proceeds to her; Father's admission of 32 facts listed in the response; the attorney's admission of 33 items stated in the response; and the production of documents.

Garcia alleges that Father, as a direct result of her response, tendered a payment on the mortgage on July 21, 2022, which was designed to substantiate the false and deceitful statements made in the July 6, 2022 letter. She further asserts the tender of the payment was evidence of Father's fraud and deceit.

Since July 26, 2022, the Sablan Defendants have not replied to the claims and accusations made in Garcia's response letter, including the alleged violations of the Rules of Professional Conduct. Garcia contends they have no intention of voluntarily rectifying their misconduct against her.

Anthony Sablan's July 2023 affidavit confirmed that he did not respond to Garcia's letter and that he has not communicated with Garcia after sending the July 6, 2022 correspondence. It also stated that he had "not taken any further steps in relation to the Property." Stacy Sablan's affidavit stated she never had any written or oral communications with Garcia.

## PROCEDURAL HISTORY

In March 2023, Garcia filed a complaint in Madera County Superior Court. On March 21, 2023, Garcia and Peter Valladares,[1] each acting as a self-represented litigant, filed a 167-page first amended complaint (without exhibits) for "ATTORNEY-CLIENT CONSPIRACY: 1. THEFT/EMBEZZLEMENT, 2. EXTORTION AND ATTEMPTED EXTORTION, OTHER RELIEF and DAMAGES." The exhibits included the July 6, 2022 letters to Garcia and her July 20, 2022 response letter. The prayer for relief on each

---

[1] Valladares, Garcia's tenant who asserts a continuing right to occupy the property, is not a party to this appeal because he did not file a separate notice of appeal and he did not sign the notice of appeal filed by Garcia. As a result, we do not have jurisdiction to grant him any relief from the June 2023 order sustaining the demurrer to his claims without leave to amend. Therefore, we do not address the issues relating only to him.

cause of action sought treble damages, general damages of $500,000 against each defendant, and punitive damages of $5 million against each defendant.[2]

In April 2023, the Sablan Defendants filed a demurrer and a motion to strike the entire first amended complaint, asserting (among other things) Garcia had not complied with section 1714.10 because she had failed to obtain a court order finding a reasonable probability of prevailing before filing a complaint alleging an attorney-client conspiracy. A few days later, Father, acting as a self-represented litigant, filed a one-page joinder in the Sablan Defendants' motion to strike the first amended complaint.

At the May 2023 hearing, the court stated the demurrer was sustained and one of the grounds was Garcia's failure to comply with section 1714.10. The court provided Garcia the opportunity to file a petition pursuant to section 1714.10 on or before June 27, 2023.

On June 6, 2023, the court signed and filed the orders prepared by defense counsel sustaining the demurrer and granting the motion to strike. Several components of the demurrer were sustained with leave to amend. The order stated: "Should Plaintiff Garcia wish to continue to pursue conspiracy claims against the Sablan Defendants, she has up to and including June 27, 2023 to file her Petition with the Court, in compliance with Civil Code section1714.10." The order also established filing dates for an opposition and a reply, and set July 25, 2023, as the hearing date on the petition. Alternatively, the order addressed what Garcia was required to do if she chose not to pursue conspiracy claims against the Sablan Defendants by stating: "A Second Amended Complaint is to be filed no later than **September 29, 2023**."

---

**2**     By specifying the amount of punitive (i.e., exemplary) damages she was requesting, Garcia violated Code of Civil Procedure section 3295, subdivision (e), which states: "No claim for exemplary damages shall state an amount or amounts."

On June 28, 2023, a day after it was due, Garcia submitted her section 1714.10 petition. The next day, a deputy clerk mailed Garcia a return letter enclosing the petition and stating it could not be filed "as it was filed untimely."

On July 10, 2023, Garcia filed a motion for reconsideration addressing the clerk's letter returning her petition unfiled and requesting to be allowed to file the petition. The motion also requested, as an alternative to reconsideration under Code of Civil Procedure section 1008, the court grant discretionary relief under Code of Civil Procedure section 473, subdivision (b) due to mistake, inadvertence, or excusable neglect.

On July 11, 2023, in accordance with the schedule set by court order, the Sablan Defendants filed their opposition to the petition itself, stating the opposition was presented out of an abundance of caution because the hearing date remained on the court's docket despite the rejection of the petition as untimely. The opposition asserted Garcia's petition was procedurally defective and lacked substantive merit because it failed to established Garcia had a reasonable probability of prevailing on her conspiracy claims.

Garcia's reply asserted the Sablan Defendants had committed perjury in their supporting affidavits opposition and Father's failure to file any opposition to the petition in accordance with the court's order established her claims qualified for an exception to section 1714.10's prefiling requirements.

On July 20, 2023, the Sablan Defendants filed an opposition to Garcia's motion for reconsideration, asserting Code of Civil Procedure section 1008 did not apply to the circumstances presented. The opposition also asserted the court should deny the request for relief pursuant to Code of Civil Procedure section 473. Four days later, Garcia filed a notice of objection and motion to strike the Sablan Defendants' opposition. That same day, the trial court filed an order vacating the hearing on Garcia's petition and continuing the hearing of her motion for reconsideration to August 31, 2023.

8.

On August 16, 2023, Garcia took a procedural step not related to the Sablan Defendants. She submitted a request for entry of default against Father and the clerk entered the default as requested.

*Trial Court's Ruling*

On August 31, 2023, the trial court heard the pending matters. Garcia and defense counsel were personally present in court. The court denied Garcia's motion for reconsideration because (1) a motion under Code of Civil Procedure section 1008 was not the proper mechanism to reconsider rejection of the filing of a petition; (2) there were no new or different facts or circumstances justifying the grant of a motion under section 473 and, thus, the petition was untimely; (3) had the petition been timely, the court would have denied it on procedural and substantive grounds. The procedural grounds were the failure to submit a proposed amended complaint and supporting affidavit as required by section 1714.10. The substantive grounds included failing to establish that the Sablan Defendants owed her an independent legal duty and failing to establish that the Sablan Defendants received an independent financial gain as a result of the alleged conspiracy.

*Appeal*

On September 7, 2023, the trial court signed and filed an order denying the motion for reconsideration. Later that month, Garcia filed a notice of appeal that referred to only the September 7, 2023 order.

The Sablan Defendants argued the appeal was taken from a nonappealable order and moved to dismiss. In February 2024, we denied the motion. We construed Garcia's notice of appeal as encompassing the trial court's order that "she failed to obtain permission for the court to file a complaint alleging a claim against an attorney for civil conspiracy under Civil Code section 1714.10." Pursuant to subdivision (d) of section 1714.10, any order made under subdivisions (a), (b), or (c) of section 1714.10 that

9.

"determines the rights of a petitioner[,] shall be appealable as a final judgment in a civil action."

In April 2025, the Sablan Defendants filed their respondents' brief. Three weeks later, Garcia filed a motion to strike the respondents' brief, asserting that brief misrepresented the record and requesting an order that certain undisputed facts had been established. We deferred the motion pending consideration of the appeal on its merits and granted Garcia an extension of time to file her reply brief.[3]

In August 2025, Garcia filed a motion for summary adjudication and a fourth application for extension of time to file her reply brief. We denied the motion because motions for summary adjudication are not an authorized procedural mechanism on appeal. We also directed Garcia to file her reply brief within 20 days.

On September 15, 2025, Garcia filed a supplemental motion to strike respondents' brief invoking judicial estoppel and res judicata to preclude the application of section 1714.10 and the civil litigation privilege in Civil Code section 47 to her conspiracy claims. We deferred the supplemental motion pending consideration of the appeal and did not change the deadline for filing the reply brief.

_Oral Argument and Supplemental Briefing_

In December 2025, this court sent the parties an oral argument notice letter and questionnaire asking if they waived argument. Garcia requested oral argument and counsel for the Sablan Defendants filed an unconditional waiver. At the February 19, 2026 oral argument, Garcia appeared telephonically and requested a continuance. Counsel for respondents was physically present in the courtroom despite having filed an

---

[3] On May 15, 2025, two days after filing the motion to strike, Garcia filed a request for clerk's judgment against Father in the superior court. It referred to the entry of default on August 16, 2023, and sought over $13 million in damages from him. That amount included punitive damages of $10 million.

unconditional waiver.  We granted Garcia's request and, a week later, issued an order resetting oral argument for March 11, 2026.

On March 2, 2026, Garcia submitted an application to file a supplemental brief. The proposed brief was returned for failing to comply with formatting requirements in the California Rules of Court and for citing unpublished opinions.  On March 4, 2026, Garcia submitted a revised application and revised proposed supplemental brief.  Despite formatting defects, we directed the clerk of court to file the supplemental brief and advised the parties the filing was for the purpose of making a full record.  The Sablan Defendants did not file any response to the supplemental brief or this court's order.  The absence of a response is not deemed a concession because, due to the lateness of Garcia's filings, the Sablan Defendants did not have 15 days to prepare a response.  (See Cal. Rules of Court, rule 8.54(d).)

On March 9, 2026, Garcia submitted a letter waiving oral argument, stating the case was fully briefed, and asserting "she stands that this case is submitted for disposition."  Later that day, we filed an order vacating the oral argument scheduled for March 11, 2026, and taking the cause under submission.  (See Cal. Rules of Court, rule 8.256(c).)

## DISCUSSION

I.      SECTION 1714.10's PREFILING REQUIREMENT APPLIES IN THIS CASE

Section 1714.10 "establishes a special proceeding of a civil nature."  (§ 1714.10, subd. (d).)  It was enacted in 1988 to "discourage frivolous claims that an attorney conspired with his or her client to harm another."  (*Klotz v. Milbank, Tweed, Hadley & McCloy* (2015) 238 Cal.App.4th 1339, 1350 (*Klotz*); see *Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, 816 (*Berg*).)  When applicable, section 1714.10 "requires a litigant to obtain court approval to file a complaint containing conspiracy allegations between an attorney and his or her client."  (*MMM Holdings, Inc.*

11.

*v. Reich* (2018) 21 Cal.App.5th 167, 186.) To obtain this approval, plaintiffs must demonstrate a reasonable probability of prevailing on the conspiracy claims. (*Stueve v. Berger Kahn* (2013) 222 Cal.App.4th 327, 329 (*Stueve*).) The reasonable probability standard was intended to weed out harassing conspiracy claims that lack a reasonable foundation and verge on the frivolous. (*Berg*, *supra*, at p. 815.) To meet the standard, a plaintiff must (1) allege sufficient facts to state a cause of action recognized by California law and (2) present competent, admissible evidence for the elements of that cause of action. (*Id*. at p. 817.)

The applicable standard of appellate review is de novo because a special proceeding under section 1714.10 operates like a demurrer and involves only questions of law. (*Berg*, *supra*, 131 Cal.App.4th at p. 822.) Similarly, the interpretation of section 1714.10, like the interpretation of statutes generally, presents a question of law subject to de novo review on appeal. (*Berg*, *supra*, at p. 822.)

A.    Claims Covered by the Statute

The current version of section 1714.10, subdivision (a) provides in part: "No cause of action against an attorney for a civil conspiracy with his or her client *arising from any attempt to contest or compromise a claim or dispute*, and which is *based upon the attorney's representation of the client*, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civil conspiracy to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action." (Italics added.) Plaintiffs are required to file "a verified petition … accompanied by the proposed pleading and supporting affidavits stating the facts upon which the liability is based." (§ 1714.10, subd. (a).)

A court's first step in applying section 1714.10 is to determine whether the pleading is covered by subdivision (a) of section 1714.10. (*Stueve, supra*, 222

12.

Cal.App.4th at p. 331.)  In accordance with the statutory text, the court must determine whether the conspiracy claim alleges conduct by the attorney "arising from any attempt to contest or compromise a claim or dispute" and "based upon the attorney's representation of the client."  (§ 1714.10, subd. (a).)  The quoted language was added by a 1991 amendment limiting the statute's reach.  (Stats. 1991, ch. 916, § 1; see Legis. Counsel's Dig., Sen. Bill No. 820 (1991–1992 Reg. Sess.) 4 Stats. 1991, Summary Dig., p. 401.)

Here, Garcia contends she is not subject to the prefiling requirements because her causes of action do not arise from any attempt to contest or compromise a claim or dispute between herself and Father.  Her opening brief asserts:  "The Sablan Defendants' failure to instantly, on July 6, 2022, to show and prove a dispute or anything *arising from any attempt to contest or compromise a claim or dispute*, their failure constitutes an absolute, clear and affirmative waiver, forfeiture and abandonment on the issue of any dispute."  The July 6, 2022 letter from the Sablan Defendants to Garcia stated:

> "This office represents your father, George H. Lopez, Jr. and we are contacting you on his behalf.  It is our understanding that you currently reside at … Deerwood Drive in Madera, which is owned by Mr. Lopez.
>
> "Because you have failed to make the appropriate mortgage payments as promised, Mr. Lopez can no longer afford to own this property.  It is his plan to sell the property as soon as possible.
>
> "Mr. Lopez believes that you plan to move out of the property shortly.  He is asking that you provide us with a date by which you plan to vacate the property, and that you make arrangements so that anyone that you have allowed to live there vacate the property as well.  Please provide that information to me via e-mail … or in writing to [our mailing address].
>
> "If we do not receive an acknowledgement from you by July 18, 2022, we will be filing a lawsuit against you to force the sale of the property in Madera Superior Court on behalf of your father.  Obviously this would be an expensive endeavor for both of you, and one that can be avoided by your participation in selling the property.  I urge you to consider

13.

this easier route. [¶] Please contact me should you have any questions or concerns."

The first sentence of the letter shows the Sablan Defendants represented Father and, as a result, demonstrates that the conspiracy claims against the Sablan Defendants are "based upon the attorney's representation of the client" as that phrase is used in section 1714.10, subdivision (a). Consequently, that element for imposing the prefiling requirement is satisfied.

The contents of the letter also qualify as an "attempt to … compromise a claim" for purposes of section 1714.10, subdivision (a). The compromise involved the potentially competing claims by Father and Garcia to rights and interests in Deerwood. Father asserted ownership of, and the right to sell, Deerwood and the letter acknowledged possible competing rights or interests that Garcia might assert—specifically, the occupancy of Deerwood. The compromise sought by the letter is Garcia vacating Deerwood and her "participation in selling the property."

Alternatively, the letter qualifies as an attempt to "contest … a claim." (§ 1714.10, subd. (a).) The verb "contest" means to challenge, call into question, or deny an adverse claim. (Black's Law Dict. (12th ed. 2024) p. 400.) The letter challenged any claim Garcia might have made to continue occupancy of Deerwood by stating a lawsuit would be filed "to force the sale of the property … on behalf of your father." A lawsuit to force the sale of jointly owned real estate is authorized by California's partition statutes. (See Code Civ. Proc., §§ 872.010–874.240.) Any co-owner of real property may bring an action for partition and request the property be physically divided or sold and the proceeds divided. (Code Civ. Proc., §§ 872.210, 872.810 [physical division], 872.820 [division by sale]; see *Lazzarevich v. Lazzarevich* (1952) 39 Cal.2d 48, 50 ["joint tenant is entitled as a matter of right to have his interest severed from that of his cotenant"].) In short, the letter contested Garcia's claims to Deerwood by suggesting Father would

14.

pursue a lawsuit to force the sale, which is a statutorily authorized procedure for terminating common interests in real property.

To the extent that Garcia is arguing there must be an existing dispute with an actual threat of impending litigation before section 1714.10 applies, we disagree because such an interpretation is contrary to the statute's language. The statute applies to "any attempt to contest … a claim." (§ 1714.10, subd. (a); see generally, *Cortese v Sherwood* (2018) 26 Cal.App.5th 445, 457 ["dispute need not have matured into litigation for section 1714.10's prefiling requirements to apply"]; Rules Prof. Conduct, rule 3.10(c) ["civil dispute" is "a controversy or potential controversy over the rights and duties of two or more persons under civil law, whether or not an action has been commenced"].) The ordinary meaning of the word "any" is " 'of whatever kind' or 'without restriction.' " (*Zabrucky v. McAdams* (2005) 129 Cal.App.4th 618, 628.) An *initial* attempt to contest a claim is a kind of attempt and, thus, interpreting the statute to exclude an *initial* attempt to contest a claim would amount to rewriting subdivision (a) of section 1714.10 by inserting a restriction that the Legislature omitted. (See Code Civ. Proc., § 1858 [rule of statutory construction]).

To summarize, the July 6, 2022 letter and e-mail from the Sablan Defendants to Garcia plays a central role in her claims that they conspired with her Father in the alleged conspiracy to embezzle and extort. When the letter and e-mail are considered in context, they show the conspiracy causes of action "aris[e] from an[] attempt to contest or compromise a claim or dispute" and are "based upon the attorney's representation of the client." (§ 1714.10, subd. (a).) Therefore, we complete the first step of the section 1714.10 analysis by concluding Garcia's pleading falls within the coverage of subdivision (a) of section 1714.10. (See *Stueve*, *supra*, 222 Cal.App.4th at p. 331.)

15.

B.     First Statutory Exception—Independent Legal Duty

The second step of our analysis addresses whether the pleaded claims are covered by either of the exceptions stated in subdivision (c) of section 1714.10. (*Stueve, supra,* 222 Cal.App.4th at p. 331.) The first exception provides: "This section shall not apply to a cause of action against an attorney for a civil conspiracy with his or her client, where (1) the attorney has an independent legal duty to the plaintiff[.]" (§ 1714.10, subd. (c).)

This exception, codified in 1991, "mirror the limits on an attorney's liability for conspiracy established by our Supreme Court in *Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39." (*Central Concrete Supply Co., Inc. v. Bursak* (2010) 182 Cal.App.4th 1092, 1099–1100.) The Supreme Court concluded a conspiracy claim did not lie "if the alleged conspirator, though a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing and was acting only as the agent or employee of the party who did have that duty." (*Doctors' Co., supra,* at p. 44.) This conclusion is derived from the agent's immunity rule, which provides that an agent is not liable for conspiring with the principal when the agent is acting in an official capacity on behalf of the principal. (*Central Concrete*, *supra*, at p. 1100.)

*1.     Independent Duty and the Agent Immunity Rule*

Garcia's opening brief cites the principle that the first exception "obviously speaks to a relationship beyond that of attorney-client." (*Evans v. Pillsbury, Madison & Sutro* (1998) 65 Cal.App.4th 599, 605.) In other words, a plaintiff need not show he or she was a client of the attorney being sued for conspiracy to establish the independent legal duty necessary to apply the first exception.

In *Klotz*, the court stated an independent legal duty to the plaintiff may "arise when an attorney engages in conduct that goes 'way beyond the role of [a] legal representative.' (*Burtscher v. Burtscher* (1994) 26 Cal.App.4th 720, 727.)" (*Klotz*, *supra*, 238 Cal.App.4th at p. 1351.) In *Burtscher*, the attorney engaged in self-help

16.

conduct designed to recover possession of real property for her clients. That self-help conduct included the attorney going to the premises, calling a locksmith to open the door, calling a deputy sheriff who threatened the occupant of the premises with arrest for trespass, and arranging for the removal of the tenants' belongings. (*Burtscher*, *supra*, at p. 727.) The court concluded the attorney "actively participated in conduct that went way beyond the role of legal representative: self-help is not the practice of law." (*Ibid*.) As a result, the court affirmed the order granting the plaintiff leave to amend the complaint to add the attorney as a coconspirator. (*Id*. at p. 728.)

In comparison, the Sablan Defendants sent Garcia one demand explicitly stating they represented her Father and were contacting her on his behalf. Sending such a letter and e-mail is a normal legal service provided to a client and is easily distinguished from the self-help conduct in *Burtscher*. For instance, the Sablan Defendants did not set foot on the property or enter the residence. Therefore, we conclude that sending the demand did not go "way beyond the role" of a legal representative; rather, it constituted the practice of law. (*Burtscher*, *supra*, 26 Cal.App.4th at p. 727.)

Next, we assume for purposes of this appeal that the demand letter would have gone "way beyond the role" of an attorney representing Father if the letter constituted extortion, a crime defined by Penal Code sections 518, 519 and 523. "Extortion is the obtaining of property or other consideration from another, with his or her consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right." (Pen. Code, § 518, subd. (a).) The requisite fear may be induced by a threat to "do an unlawful injury to the person or property of the individual threatened or of a third person"; "accuse the individual threatened … of a crime"; "expose, or to impute to … her … a deformity, disgrace, or crime"; "expose a secret affecting … her"; or "report … her … immigration status." (Pen. Code, § 519, subds. 1–5.) First, threatening the filing of a civil lawsuit if a party's concerns are not resolved is

17.

not among the threats covered by the statute. Second, filing a partition action does not constitute an "unlawful injury to the … property" because, as described earlier, a joint tenant is authorized by law to bring a partition action to sever the co-ownership. (See Code Civ. Proc., §§ 872.210, 872.820 [division by sale].) Stated another way, co-owners of real estate are not permanently trapped in that relationship because California's partition statutes provide a mechanism for terminating the co-ownership.

Consequently, the July 6, 2022 letter did not make a threat satisfying any of the criteria in Penal Code section 519. As a result, the act of sending the letter to Garcia did not constitute extortion. (See *Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1298–1300 [prelitigation demand letter did not constitute extortion].) In comparison, the attorney's letter in *Flatley v. Mauro* (2006) 39 Cal.4th 299 constituted extortion because it threatened to publicly accuse the plaintiff of rape. (*Id*. at p. 329.) Garcia's references to *Flatley* fail to recognize the difference between threatening civil litigation and threatening to accuse someone of a crime.[4]

Similarly, the letter did not violate Rule 3.10(a) of the Rules of Professional Conduct, which states: "A lawyer shall not threaten to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute." (See *Cohen v. Brown* (2009) 173 Cal.App.4th 302, 318 [defendant attorney committed extortion by threatening and then presenting an administrative charge to the State Bar].) A threat of civil litigation does not involve "criminal, administrative, or disciplinary charges" as that phrase is used in Rule 3.10(a). Thus, the rule does not prohibit attorneys from threatening to file a civil lawsuit if a controversy or potential controversy is not resolved.

---

**4** In *Flatley*, the California Supreme Court cautioned that its opinion "should not be read to imply that rude, aggressive, or even belligerent prelitigation negotiations ... that may include threats to file a lawsuit, report criminal behavior to authorities or publicize allegations of wrongdoing, necessarily constitute extortion." (*Id.* at p. 332, fn. 16.)

Garcia also contends the Sablan Defendants "had the <u>duty</u> to follow through with their initial letter communication" and breached that duty by refusing to reply to her after the demand letter and e-mail invited her response. Garcia has not cited, and we have not located, any authority establishing that attorneys have a duty to reply to a response to a demand letter or otherwise follow through with any course of conduct described in the demand, such as initiating a lawsuit. We will not recognize such a duty because Garcia has not explained how such a duty could simultaneously exist without conflicting with the duty of loyalty an attorney owes to his or her client. For example, if a client instructed an attorney to take no further action after the client reviewed the third party's response to the demand, an attorney reply would contradict those instructions. In the absence of any authority holding otherwise, we conclude as a matter of law that attorneys who send a demand letter to a third party do not owe an independent legal duty to the third party (1) to reply to the third party's response or (2) to follow through with conduct described in the letter.

### 2. *Duty Not to Defraud Nonclients*

Garcia contends she qualifies for the first exception based on the principle that "an attorney has an independent legal duty to refrain from defrauding nonclients." (*Klotz*, *supra*, 238 Cal.App.4th at p. 1351.) In *Klotz*, the court described three cases as examples of conspiracy claims that were allowed to proceed. (*Ibid.*) In *Pavicich v. Santucci* (2000) 85 Cal.App.4th 382, the conspiracy claim alleged a corporation and its attorney conspired to conceal from the plaintiff, a potential investor, that other investors had threatened litigation against the venture. (*Id.* at p. 397; see *Klotz*, *supra*, at p. 1351.) In *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, the conspiracy claim alleged an insurance company's coverage counsel misrepresented the policy limits to a party that had obtained a judgment against the company's insured. (*Id.* at pp. 84–85; see *Klotz*, at p. 1351.) In *Rickley v. Goodfriend* (2013) 212 Cal.App.4th

19.

1136, the court concluded the defendant attorneys "owed plaintiffs an independent legal duty with respect to the funds held in the attorneys' trust account" for the remediation of properties held by both the plaintiffs and the clients of the defendant attorneys. (*Id*. at p. 1156.) The defendant attorneys had a duty to distribute the funds equitably for the benefit of all property holders without favoritism to their clients. (*Id*. at p. 1156; see *Klotz*, at p. 1351.)

Here, Garcia has alleged several express and implied misstatements of fact in the demand letter. For example, she asserted the demand falsely represented that Father was the only or sole owner of Deerwood, that she had failed to make mortgage payments, and that only Father had the ability to sell the property. Her conspiracy claims, however, do not allege how she *relied upon* the misrepresentations to her *detriment*. (See *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 [elements of fraud must be pleaded with particularity and justifiable reliance on the defendant's misrepresentation is among those elements]; *Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1062 [plaintiff's reliance on defendant's misrepresentation must have caused plaintiff to take a detrimental course of action].) For example, she does not allege she transferred loan proceeds or anything else to Father or the Sablan Defendants based on her justifiable reliance on facts misstated in the demand letter. (See *Cortese v. Sherwood, supra,* 26 Cal.App.5th at pp. 459, 462 [plaintiff's "allegations against [the attorney were] insufficient to state a claim for fraud" and thus did not qualify for the § 1714.10, subd. (c) exceptions].) This is not a situation where a plaintiff invested in a project based on an attorney's written opinion intended to be transmitted to and relied upon by the plaintiff. (See *Pavicich v. Santucci, supra*, 85 Cal.App.4th at p. 395 [plaintiffs invested in project in reliance on attorney's statements].)

In sum, Garcia's conspiracy allegations about the demand letter do not satisfy the elements of a fraud claim and, therefore, do not invoke the independent legal duty not to defraud nonclients. As a result, the conspiracy allegations do not qualify for the first

20.

exception in section 1714.10, subdivision (c). Rather, the allegations against the Sablan Defendants fall within the agent's immunity rule.

   C.  <u>Statutory Exception—Financial Gain</u>

  The second statutory exception provides that section 1714.10 "shall not apply to a cause of action against an attorney for a civil conspiracy with his or her client, where … (2) the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of *the attorney's financial gain*." (§ 1714.10, subd. (c), italics added.) In *Berg*, the court interpreted the financial gain component of this exception as the codification of the attorney financial advantage exception to the agent's immunity rule. (*Berg*, *supra*, 131 Cal.App.4th at p. 834.) The court stated cases had interpreted financial advantage "to mean a personal advantage or gain that is over and above ordinary professional fees earned as compensation for performance of the agency." (*Ibid*.) For example, a pleading that refers only to the attorney's contingent fees does not allege the attorney stood to gain anything more than a fee for his work as an attorney. (*Cooper v. Equity Gen. Insurance* (1990) 219 Cal.App.3d 1252, 1260–1261; see *Neilson v. Union Bank of California, N.A.* (C.D.Cal. 2003) 290 F.Supp.2d 1101 1122 ["California courts uniformly hold that ordinary fees, even fees calculated on the basis of the amount of assets held in an account, do not satisfy the 'personal gain or financial advantage' requirement"].)

  Garcia's reply brief challenges the statement in the respondents' brief that she "failed to provide evidence that the Sablan Defendants received 'any independent financial gain' from the letter sent to [her]." Garcia contends the "statement is rendered false based upon and supported by [Father]'s Default and Default Judgment. [My] claim that [the Sablan Defendants] *received 'any independent financial gain*,' now and since entry of default against [Father] is true, correct and established." For the reasons stated

21.

below, we reject Garcia's argument that the default entry against Father established the existence of the required "attorney's financial gain." (§ 1714.10, subd. (c)(2).)

### D. Legal Effect of Father's Default

After the August 2023 entry of default against Father, Garcia argued to the trial court that the default supported and proved all her accusations against the Sablan Defendants. First, she asserted Father's default resulted in his deemed admission that all factual allegations in her first amended complaint are true. Second, she asserted the default bound the Sablan Defendants and precluded them from attacking any aspect of the first amended complaint deemed admitted by Father. Similar arguments were made in her September 2025 supplemental motion to strike respondents' brief invoking judicial estoppel and res judicata. Those arguments were slightly broader because they asserted the conclusive binding effect not only of the August 2023 default, but also her more recent May 2025 request for default judgment.

We reject Garcia's argument that the Sablan Defendants are bound by the entry of default against Father because it is contrary to well established principles of California law. In *Taylor v. Socony Mobil Oil Co.* (1966) 242 Cal.App.2d 832, the plaintiff sued Socony Mobil and one of its employees for malicious prosecution. The employee defaulted and Socony Mobil answered with a general denial. (*Id.* at p. 833.) The plaintiff argued the defendant employee's default was binding on the defendant employer, Socony Mobil. (*Id.* at p. 834.) The court rejected the argument, stating: " 'It is an established principle of law that admissions implied from the default of one defendant ordinarily are not binding upon a co-defendant who, by answering, expressly denies and places in issue the truth of the allegations thus admitted by the absent party.' " (*Ibid.*, quoting *Miller v. Keegan* (1949) 92 Cal.App.2d 846, 852; see *Western Heritage Ins. Co. v. Superior Court* (2011) 199 Cal.App.4th 1196, 1211 [a party's default does not bind nondefaulting

22.

codefendants]; 6 Witkin, Cal. Procedure (6th ed. 2021) Proceedings Without Trial, § 171, p. 656 [default of fewer than all defendants].)

We conclude this principle extends to nondefaulting defendants who have appeared in the lawsuit and challenged the pleadings rather than filing an answer. As a result, we reject all of Garcia's arguments that are based on her erroneous contention that the Sablan Defendants are bound by admissions resulting from the entry of default against Father. As a result, this opinion need not explain how an entry of default, which is not final and binding on anyone, differs from the entry of a default *judgment*.

## II.     COMPLIANCE WITH SECTION 1714.10

After determining section 1714.10's prefiling requirements applied to Garcia's conspiracy claims against the Sablan Defendants, the trial court proceeded to the question whether to grant her approval to file and pursue those claims. The court answered that question by denying Garcia's petition for approval. Consequently, we next consider whether that denial was appropriate.

### A.     Failure to Submit Required Documents

Section 1714.10, subdivision (a) provides in part: "The court may allow the filing of a pleading claiming liability based upon such a civil conspiracy following the filing of a verified petition therefor *accompanied by the proposed pleading* and *supporting affidavits* stating the facts upon which the liability is based." (Italics added.)

The trial court's June 6, 2023 order sustaining the Sablan Defendants' demurrer gave Garcia a choice of how to proceed. The first choice stated that, "[s]hould Garcia wish to continue to pursue conspiracy claims against the Sablan Defendants, she has up to and including June 27, 2023, to file her Petition with the Court, in compliance with Civil Code section 1714.10." (Boldface omitted.) By directing that Garcia comply with section 1714.10, the order required any petition submitted by her to be "accompanied by the proposed pleading and supporting affidavits," as that phrase is used in section

23.

1714.10, subdivision (a). Because that requirement is stated in the statute, the order did not need to explicitly direct Garcia to include those documents with her petition. As a result of Garcia's failure to accompany her petition with a proposed amended complaint and any supporting affidavits, she failed to comply with section 1714.10.

Garcia's argument that she was not required to submit a proposed pleading with her petition relies on the wording of the second choice set forth in the June 6, 2023 order, which stated: "A Second Amended Complaint is to be filed no later than **September 29, 2023**." This sentence, when read in context with the first choice and the parts of the order sustaining the demurrer on various grounds *with leave to amend*, described what Garcia was required to do in the event she chose *not* to continue to pursue conspiracy claims against the Sablan Defendants and, instead, exercised the leave to amend granted to her in the order. The sentence describing Garcia's second choice is not reasonably interpreted as relieving her of the order's requirement (expressed three sentences earlier) that she comply with section 1714.10 if she chose to file a petition requesting permission to pursue conspiracy claims against the Sablan Defendants.

Garcia's arguments about willful and fraudulent conduct by the Sablan Defendants' attorney in preparing a subsequent order and judicial error in rubber-stamping that order are rejected because the arguments are based on a misinterpretation of the June 6, 2023 order. In preparing the proposed order signed and filed by the trial court on September 7, 2023, counsel did not violate Business and Professions Code section 6068, subdivision (d) and did not commit "reprehensible, contemptable, sanctionable" acts as claimed by Garcia.

In sum, Garcia's failure to comply with the requirement in section 1714.10, subdivision (a) that her petition be "accompanied by the proposed pleading and supporting affidavits" justified the denial of her petition. Rather than relying on that

24.

ground alone, we next consider a separate, independent ground for affirming the trial court's decision.

B.     Failure to Establish a Reasonable Probability of Prevailing

Section 1714.10, subdivision (a) allows an attorney-client conspiracy claim within its coverage to proceed only if "the court determines that the party seeking to file the pleading has established that there is a *reasonable probability that the party will prevail* in the action." (Italics added.)  To meet the reasonable probability standard, a plaintiff must (1) state a viable cause of action and (2) present competent, admissible evidence for the elements of the claim. (*Berg*, *supra*, 131 Cal.App.4th at p. 817.)

Addressing whether Garcia stated a cause of action, the Sablan Defendants contend "there is no civil action for 'extortion' in California."  In *Monex Deposit Co. v. Gilliam* (C.D. Cal. 2009) 666 F.Supp.2d 1135 (*Monex*), the district court addressed the labeling of certain claims by stating:  "California has recognized a civil cause of action for the recovery of money obtained by the wrongful threat of criminal or civil prosecution, whether the claim is denominated as 'extortion, menace, or duress.' " (*Id*. at p. 1136; see *Leeper v. Beltrami* (1959) 53 Cal.2d 195, 205 [plaintiff allowed to rescind the sale of ranch property for a third of its market value where the sale was made under duress].)

Accordingly, we consider whether the claim Garcia labeled extortion or attempted extortion has stated a cause of action under the legal theory described in *Monex*.  We conclude Garcia has not stated a cause of action because she has not alleged (1) a *wrongful* threat of civil prosecution or (2) that money or property was obtained from her by such a threat.  As described earlier, the threat of a lawsuit forcing the sale of Deerwood was not wrongful because a joint tenant has a statutory right to file a partition action to terminate the co-ownership relationship.  In addition, Garcia has not alleged any money or property was obtained from her as a result of the demand letter and e-mail.

25.

Rather, the first amended complaint shows Garcia vigorously contested any attempt to sell Deerwood or to obtain money from its sale.

We next consider Garcia's claim that the Sablan Defendants conspired with Father to embezzle the remaining loan proceeds from the refinancing of Deerwood. We conclude Garcia has not established a reasonable probability of success on that claim. Garcia alleged the proceeds from the refinancing were payable in both their names and Father held the $14,930.36 in remaining proceeds in his bank account in a custodial capacity under their fiduciary relationship. Thus, Father had custody of the funds since the time of the refinancing and no conduct by the Sablan Defendants could have assisted him in obtaining custody or control of the funds already in his bank account. In addition, the absence of any supporting affidavit means Garcia did not present "competent, admissible evidence to establish the elements of the claim." (*Berg*, *supra*, 131 Cal.App.4th at p. 817.)

To the extent that Garcia has relied on the entry of default against Father to act as a substitute for a supporting affidavit or other evidence, that reliance is not justified because, as explained earlier, California law clearly provides that Father's default does not bind the Sablan Defendants.

To summarize, Garcia has not established a reasonable probability of prevailing on her conspiracy claims against the Sablan Defendants. As a result, the trial court correctly denied her petition under section 1714.10 on substantive grounds.

## DISPOSITION

The September 7, 2023 order is affirmed. The Sablan Defendants, as prevailing respondents, are entitled to recover their costs on appeal from appellant Garcia. (Cal. Rules of Court, rule 8.278(a)(1), (2); see Cal. Rules of Court, rule 8.278(c) [procedures for claiming or opposing costs].)

Appellant's motion to strike respondents' brief, filed May 13, 2025, is denied.

26.

Appellant's supplemental motion to strike respondents' brief, filed September 15, 2025, is denied.

FRANSON, J.

**WE CONCUR:**

DETJEN, ACTING P. J.

PEÑA, J.